Filed 3/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANDREW M. WADE,<br><br>     Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF<br>MONTEREY COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | H045813<br>(Monterey County<br>Super. Ct. No. 17CR001569) |

Andrew M. Wade is an active duty member of the United States Army Special Forces Group and affiliated with the Naval Postgraduate School in Monterey. Wade seeks relief by writ of mandate from an order of respondent Monterey County Superior Court denying his request to enter a pretrial diversion program after he was charged with misdemeanor driving under the influence with a blood alcohol concentration above 0.15 percent.

At issue is the trial court's discretion to decide whether a defendant who is eligible to participate in pretrial diversion under the military diversion statute, Penal Code section 1001.80, is nevertheless unsuitable. We address whether the court in this case failed to exercise its discretion in conformity with the rehabilitative objectives of military diversion by relying on factors typically employed in felony sentencing. We also address whether the court's decision to deny pretrial diversion for Wade based on the inherently dangerous nature of driving under the influence contravened recent changes to the statute

to ensure that eligible military defendants charged with misdemeanor driving under the influence violations would be considered for the diversion program.

As we will explain, we find that the trial court departed from the principles behind Penal Code section 1001.80 by applying the felony sentencing guidelines without apparent consideration of the rehabilitative purpose of diversion, and abused its discretion by denying Wade's request using criteria which the Legislature implicitly rejected. We will grant the petition for writ of mandate and direct the trial court to reconsider Wade's request for military diversion consistent with the letter and intent of Penal Code section 1001.80.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Wade was arrested in June 2017 after police officers observed his pickup truck traveling north on Highway 1 just before 1:00 a.m. "weaving within the lane back and forth in a serpentine like fashion traveling at a slow speed." The truck crossed a solid white line several times and kept decreasing its speed; in response to the signal to pull over, Wade attempted an unsafe stop on a narrow shoulder. His blood alcohol concentration was measured at 0.16. The Monterey County district attorney filed charges of misdemeanor driving under the influence of alcohol (Veh. Code, § 23152, subd. (a); count 1) and driving with 0.08 percent or higher blood alcohol (*id*., § 23152, subd. (b); count 2) and alleged as to both counts that Wade was driving with a blood alcohol concentration of 0.15 percent or higher.

At his September 2017 arraignment, Wade asked to be placed in the court's pretrial diversion program pursuant to California's military diversion statute. The statute authorizes the trial court to place a defendant charged with a misdemeanor offense in a pretrial diversion program upon determining that the defendant (1) was or currently is a member of the United States military, and (2) may be suffering from sexual trauma, traumatic brain injury, posttraumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service. (Pen. Code, § 1001.80, subds. (a), (b).)

2

(Unspecified statutory references are to the Penal Code.) If the defendant satisfactorily completes the diversion program, the criminal charge is dismissed. (§ 1001.80, subd. (c).) The People opposed the request, and the trial court set the matter for a contested hearing.

## A.    Request for Pretrial Military Diversion

The People did not dispute Wade's eligibility for military diversion but argued in written opposition that the court should exercise its statutory discretion to limit military diversion of defendants charged with driving under the influence. Since the statute does not list factors for the trial court to consider in assessing a defendant's suitability, the prosecutor urged the trial court to implement bright line criteria that would preclude military defendants from pretrial diversion under specified circumstances, such as when there is an allegation of excessive blood alcohol.[1]  The People's opposition asserted that Wade posed a "serious risk to the people of the community given his extreme level of intoxication, dangerous driving resulting in a collision, and decision to leave the scene of the collision." (As discussed in more detail *post*, the People's written opposition to the request for pretrial diversion apparently misstated the facts, which as later presented to the trial court did not include a collision or Wade leaving the scene.)

Wade responded with a supplemental brief and supporting letters from an army superior and from his treating psychiatrist. He disputed any authority of the district attorney's office to define suitability under the statute and argued that to preclude diversion for an eligible defendant based on blood alcohol level was contrary to the statutory intent, particularly since the Legislature amended section 1001.80 in 2017 to

---

[1] The district attorney argued that the following criteria should preclude a defendant from military diversion:  (1) excessive blood alcohol (0.15 or higher); (2) refusal to submit to chemical testing; (3) driving under the influence and hit and run; (4) prior DUI conviction; (5) arrest for DUI while on probation for any offense; or (6) driving under the influence of combined drugs and alcohol.

3

clarify that military diversion is available on misdemeanor charges of driving under the influence or driving under the influence causing injury. (See § 1001.80, subd. (*l*).) Wade contended that he was "precisely the kind of person for which" military diversion was intended, noting he has served for 10 years in the army with multiple deployments; he has endured stressful and traumatic experiences while serving, which according to his psychiatrist are associated with "episodic binge drinking" that has allowed him to talk "with his Special Forces buddies" about otherwise classified experiences from deployments; he has since remained sober and is motivated to obtain appropriate treatment and continue his career; and he has no prior driving under the influence arrests and no criminal record.

A key issue disputed by the parties was how the trial court should utilize a worksheet entitled "Superior Court of California, County of Monterey, Military Diversion Information Sheet." The information sheet states that the court, in collaboration with the offices of the local district attorney and public defender, "has compiled the following information" regarding military diversion pursuant to section 1001.80. It states that "[e]ach case will be considered on an individual basis. The court has the sole discretion to grant or deny participation in Military Diversion after considering the relevant factors and nature of the charges." The information sheet lists seven "eligibility criteria" derived from the statute and 29 "factors of con[s]ideration in granting or denying military diversion" (information sheet factors).[2]

---

[2] The seven eligibility criteria listed on the information sheet provide that the defendant: (1) is charged with a misdemeanor only; (2) is a current or former member of the United States military; (3) may be suffering from one of the listed, service-related traumatic or mental health conditions; (4) consents to military diversion and waives the right to a speedy trial; (5) signs a waiver related to future disclosure of any record relevant to treatment under military diversion; (6) will be assigned a probation officer to set additional reporting and treatment requirements during the course of the military diversion; and (7) has not been granted military diversion in another case. (continued)

4

The parties debated the applicability of the information sheet factors—derived from the felony sentencing guidelines in the California Rules of Court—to the court's suitability analysis. The People argued that based on the information sheet factors and the district attorney's proposed bright line criteria, the court should find Wade unsuitable for military diversion. Wade argued that the plain language of section 1001.80 applies to any misdemeanor offense, so long as the baseline eligibility criteria are met. Wade argued that only three of the information sheet factors were relevant to his request: the nature of the charges, the defendant's lack of prior record, and whether he was suffering from a mental or physical condition that significantly reduced culpability for the crime.

## B. Trial Court Hearing and Denial of Military Diversion Request

Defense counsel argued at the hearing that to exclude Wade from military diversion based on his blood alcohol level would contradict the legislative intent behind providing diversion to defendants whose trauma from military service manifests in substance abuse. The prosecutor responded that in exercising its discretion under the diversion statute, the court must "balance the protection of the public . . . . At some point, there has to be a dividing line, and . . . .08 is the bright line rule for DUI." The prosecutor suggested the court has "the prerogative to create some reasonable rules" and urged it to deny Wade's request "based upon the excessive alcohol in this case."

---

The 29 factors of consideration include, among others: the nature of the charges; whether the crime involved violence or bodily harm; whether the defendant was armed or used a weapon; whether the defendant induced others to participate in the crime; whether the defendant was on probation or parole; whether the crime involved damage of great monetary value or a large quantity of contraband; the defendant's prior convictions or prior performance while under court supervision; whether the defendant engaged in violent conduct that indicates a serious danger to society; whether the defendant exercised caution to avoid harm to persons or damage to property; whether the defendant has no prior record or an insignificant record of criminal conduct; and whether the defendant voluntarily acknowledged wrongdoing before arrest or at an early stage of the proceedings.

5

The prosecutor also summarized the facts of the offense for the court, which differed notably from the facts set forth in the People's written opposition. According to the prosecutor at the hearing, Wade's pickup truck was weaving serpentine-like on the highway and traveling at a slow speed, and when signaled by the police to pull over, Wade tried to stop in an unsafe place on a narrow shoulder.

The trial court denied Wade's request. It dismissed any notion that the bright-line proposal was decisive, stating that the decision to admit a defendant into the military diversion program rested with the court. It viewed the information sheet as "designed to not be exclusive and to be inclusive if at all possible. . . . [I]t really is just a sheet to hopefully give the Court . . . some kind of a standard to base its decision with regards to these particular cases." The court noted it had "reviewed the factors of consideration in granting or denying military diversion" which were "basically taken from the factors of aggravation versus mitigation," and had considered Wade's lack of criminal record and the letters presented by counsel. The court then stated that "look[ing] at the nature of the charge, . . . driving under the influence while impaired is an inherently dangerous type of offense, especially when we're talking about blood alcohols that are double the legal limit. . . . [T]his was a .16. The driving was bad driving in this particular case. . . ."[3] Also the fact that the defendant was not a passive participant . . . . He decided to drink alcohol and decided to drive a motor vehicle. So that being said, in this particular case, the Court believes that public safety would dictate that this particular case not come within 1001.8[0], respectfully."

---

[3] It is unclear in the reference to "bad driving" whether the trial court may have relied on inaccurate facts included in the People's written opposition to the request for pretrial diversion. (See Analysis *post*, part II.C.2.)

**C.      Petition for Writ of Mandate in the Superior Court Appellate Division**

Wade filed a petition for writ of mandate in the trial court's appellate division, claiming the trial court "applied criteria and factors that do not accord with either the letter or the spirit of section 1001.80." Wade also sought a stay, citing irreparable harm based on the denial of a substantial right conferred by the Legislature under section 1001.80 and irreversible damage to his military career.

Wade later asked the appellate division to grant calendar preference, or alternatively to certify and transfer the matter to the Court of Appeal. In a sworn declaration, Wade outlined the pending repercussions of the driving under the influence charge, including reinvestigation of his security clearance. He explained that the military review panel would consider the outcome in civilian court, including if he is allowed to participate in pretrial diversion. He noted that after completing his Master's degree at the Naval Postgraduate School he likely will be deployed, but his anticipated assignment as a Special Forces Company Commander is in jeopardy pending resolution of the charge.

Wade also sought to correct "significant factual errors" in the People's written opposition to the request for pretrial diversion, namely that he had engaged in " 'dangerous driving resulting in a collision' " and had "left the scene." Wade avowed responsibility for his "exceptionally poor judgment" in driving under the influence of alcohol but asserted that he "did not cause an accident," "did not hurt any other person or property," and "did not leave the scene of an accident."

**D.      Appellate Division Denial of Writ Petition**

A panel of the appellate division denied the writ petition in a divided two-to-one opinion. Both the majority and the dissent concluded that like California's other diversion statutes, the primary objective of military diversion is for the court to consider whether an eligible defendant will benefit from education, treatment, and rehabilitation. Both opinions recognized that the trial court did not directly consider this primary objective in making its decision but instead focused on factors from the information sheet

7

related to the nature of the offense. It is on this point that the majority and dissent disagreed: whether these factors were a proper basis for the trial court's decision to deny Wade's pretrial military diversion request.

The two-member majority opinion found no error in the trial court's consideration of the information sheet factors, which it likened to the statutorily-prescribed "mitigating and aggravating factors" in the comparable context of deciding deferred entry of judgment for juveniles.[4] Given the trial court's discretion to deny pretrial diversion, the majority was "reluctant to presume that the court did not consider the primary objective of the statute" in rendering its decision, stating that "[t]o do so would be to fail to accord all presumptions in favor of the judgment." It reasoned that the court properly rejected a blanket exclusion or rule based on blood alcohol level and stated it had considered Wade's submissions. The majority concluded that substantial evidence supported the trial court's decision, and Wade failed to meet his burden of showing an abuse of discretion.

The dissenting judge disagreed that the trial court's exercise of discretion was properly based in law. The judge noted that the origin of the information sheet factors in the felony sentencing guidelines means they are "heavily weighted toward the severity of the crime as the primary objective," which "unsurprisingly" led the trial court to focus on the offense and its inherent dangers rather than on whether the defendant would benefit from education, treatment, and rehabilitation. The dissent also questioned the public safety rationale for the court's decision, since the Legislature "expressly allowed for all

_____

[4] Welfare and Institutions Code section 791, subdivision (b), provides that a court considering a deferred entry of judgment in lieu of jurisdictional and disposition hearings must direct the probation department to investigate and "take into consideration the defendant's age, maturity, educational background, family relationships, demonstrable motivation, treatment history, if any, *and other mitigating and aggravating factors* in determining whether the minor is a person who would be benefited by education, treatment, or rehabilitation." (Italics added.)

8

persons charged with misdemeanor driving under the influence to be eligible for pretrial military diversion (without limitation based on blood alcohol content)," even defendants charged with driving under the influence and causing injury, who "arguably" pose a greater safety risk. Finding "nothing in the record, either explicitly or by inference" to show that the court considered the rehabilitative objectives, the dissenting judge concluded that the court had based its discretion "on an incorrect primary objective."

Wade filed a petition for writ of mandate in this court. We requested preliminary opposition to the petition, stayed the superior court proceedings, and issued an order to show cause why a peremptory writ should not issue.

## II.    DISCUSSION

Wade seeks writ relief to overturn the order denying his request for pretrial diversion and to direct the trial court to place him in the diversion program. He contends that the trial court's discretion to decide whether he is suitable for diversion does not extend to criteria that are incompatible with the intent and purpose of the military diversion statute. The People respond that the statute leaves the determination of a defendant's suitability to the sound discretion of the court, including for reasons considered by the trial court in this case, namely the nature of the crime charged, public safety, and any aggravating factors.

We briefly address whether writ relief is proper. As noted in relation to drug diversion in *Morse v. Municipal Court* (1974) 13 Cal.3d 149, 155 (*Morse*), "[a]n order denying diversion is a preliminary determination from which no provision is made for interlocutory review but which is subject to review on appeal from a judgment in the criminal proceedings." However, Wade's petition suggests that the issues before the trial court in this case reflect a broader effort by the district attorney's office in Monterey County to disqualify otherwise eligible military defendants from pretrial diversion based on factors not contemplated in the statute such as blood alcohol level. He also argues that

9

the felony sentencing guidelines are not an appropriate guidance for the court since they have little bearing on a military defendant's suitability for diversion.

We believe these issues warrant prompt resolution given the relative novelty of the military diversion program and likelihood that the issues presented here will repeat as military defendants seek the chance to participate in the program. (See Cal. Rules of Court, rules 8.500 & 8.1002; *Morse*, *supra*, 13 Cal.3d at p. 155.)

## A. Statutory Background

Section 1001.80 was enacted in 2014 and amended in 2017.[5] Military diversion represents a relatively new addition to the state's diversion programs,[6] which generally authorize trial courts to divert eligible persons charged with qualifying offenses from the normal criminal process into treatment and rehabilitation. (*People v. Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 61 (*On Tai Ho*); *People v. Bishop* (1992) 11 Cal.App.4th 1125, 1128 (*Bishop*).) The primary purpose of diversion is rehabilitation. (*Bishop*, *supra*, at p. 1130.) As described by the California Supreme Court in its analysis of California's drug diversion statute, "diversion is intended to offer a second chance to offenders who are minimally involved in crime and maximally motivated to reform, and the decision to divert is predicated on an in-depth appraisal of the background and personality of the particular individual before the court." (*On Tai Ho*, *supra*, at p. 66.)

Section 1001.80 authorizes a trial court to grant pretrial diversion to a defendant charged with a misdemeanor who was, or currently is, a member of the United States

___

[5] Section 1001.80 (added by Stats. 2014, ch. 658 (S.B. 1227), § 1, eff. Jan. 1, 2015) was amended in 2017 by the passage of Senate Bill No. 725 (Stats. 2017, ch. 179 (S.B. 725), § 1, eff. Aug. 7, 2017).

[6] The Legislature has enacted a range of diversion statutes, including by way of example, drug diversion (§§ 1000-1000.4), misdemeanor diversion (§§ 1001.1-1001.9), and diversion of individuals with mental disorders (§§ 1001.35-1001.36). (See *Davis v. Municipal Court* (1988) 46 Cal.3d 64, 73-77 [summarizing the history of statutorily mandated pretrial diversion programs in California].)

10

military, and who may be suffering from sexual trauma, traumatic brain injury, posttraumatic stress disorder (PTSD), substance abuse, or mental health problems as a result of his or her military service. (§ 1001.80, subd. (a).) If the court determines the defendant meets the criteria and consents to diversion, the court may place the defendant in a pretrial diversion program. (*Id*., subd. (b).) This means "postponing prosecution, either temporarily or permanently" to treat the defendant who is suffering from one of the listed conditions as a result of his or her military service. (*Id*., subd. (k)(1).)

As amended in 2017, a misdemeanor offense for which a defendant may be placed in pretrial military diversion expressly includes a violation of Vehicle Code sections 23152 or 23153 (for driving under the influence or for driving under the influence and causing bodily injury to another person); diversion does not limit potential administrative sanctions against the defendant's driving privileges. (§ 1001.80, subd. (*l*).) The Legislature amended section 1001.80 by urgency statute to clarify that military diversion is available to defendants charged with misdemeanor driving under the influence, notwithstanding Vehicle Code section 23640, which generally prohibits a suspension or stay of proceedings on charges of driving under the influence to allow the accused to participate in education or treatment. [7]

Under section 1001.80, criminal proceedings may be reinstated for a defendant found to be "performing unsatisfactorily in the assigned program" or who "is not benefiting from the treatment and services provided under the diversion program" (§ 1001.80, subd. (c)), but "[i]f the defendant has performed satisfactorily during the period of diversion, . . . the criminal charges shall be dismissed." (*Ibid*.) The statute

---

[7] Court of Appeal decisions from 2016 disagreed as to whether Vehicle Code section 23640 precluded application of the military diversion statute to a military defendant charged with misdemeanor driving under the influence offenses. (Compare *People v. VanVleck* (2016) 2 Cal.App.5th 355, 358 with *Hopkins v. Superior Court* (2016) 2 Cal.App.5th 1275, 1278.)

addresses the type of program or treatment services a court may select for military diversion, whether federal or community-based (*id*., subds. (d), (e)), directs the court to "give preference to a treatment program that has a history of successfully treating veterans who suffer" from the listed conditions as a result of military service (*id*., subd. (f)), and authorizes collaboration with the state and federal departments of veterans affairs "to maximize benefits and services provided to a veteran" (*id*., subd. (g)).

**B.      Standard of Review**

Section 1001.80 grants discretionary authority to the trial court.  (§ 1001.80, subd. (b) [stating the court "may" place a defendant in military diversion upon determining the person, charged with a misdemeanor offense, meets the dual criteria for eligibility set forth in subd. (a)].)  We therefore apply the abuse of discretion standard to our review of the trial court's denial of Wade's request.

It is commonly said that a trial court abuses its discretion when it " 'exceeds the bounds of reason, all of the circumstances before it being considered' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566) or its decision is "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)  But judicial discretion must also be " 'guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977 (*Alvarez*).)

This understanding is essential to assess the scope of judicial discretion conferred by statute.  It means that "all discretionary authority is contextual . . . ." (*Alvarez*, *supra*, 14 Cal.4th at p. 978.)  A reviewing court "cannot determine whether a trial court has acted irrationally or arbitrarily . . . without considering the legal principles and policies that should have guided the court's actions." (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

12

Where the source of discretion is statutory, we measure the trial court's exercise of judicial discretion "against the general rules of law and . . . against the specific law that grants the discretion." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393 (*Horsford*).) "If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal." (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106 (*Farmers*).) Simply stated, "an abuse of discretion arises if the trial court based its decision on impermissible factors [citation] or on an incorrect legal standard." (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)

## C.     Analysis

Wade argues that the trial court's implementation of section 1001.80 must be guided by the statute's remedial purpose, clearly articulated in the legislative history. He contends that the court committed legal error by considering factors designed to weigh punishment for a convicted felon, not to assess whether a military defendant can benefit from pretrial diversion. He claims in particular that by relying on the inherently dangerous nature of driving under the influence, the trial court in effect added a limitation to the statute that the Legislature could have, but did not include.

The People contend quite differently. They note, correctly, that section 1001.80, subdivision (a) states the minimum eligibility requirements for military diversion, providing a baseline upon which the trial court "may" place the defendant in a pretrial diversion program as stated in subdivision (b). Since the statute does not list factors or criteria to guide the court in deciding whether to grant pretrial diversion, and sets no limits restricting what the court may consider, the People claim that trial judges

13

themselves must determine what criteria to apply.  The People point to the information

sheet developed by the Monterey County Superior Court as one such example.

We are not entirely persuaded by either position.  A trial court lacking specific,

statutory criteria to guide its suitability determination is not operating in a vacuum; that

the statute imposes no restrictions on what the court may consider does not alter the

court's fundamental duty to exercise discretion consistent with the principles and purpose

of the governing law.  (See *Carmony*, *supra*, 33 Cal.4th at p. 377.)  But neither do we

view lawful limits on the exercise of discretion as a basis for limiting the court's

consideration of factors or criteria that it deems relevant, so long as that assessment does

not reveal an erroneous understanding of or " 'transgress[] the confines of the applicable

principles of law' " (*Horsford*, *supra*, 132 Cal.App.4th at p. 393).  The discretion to

consider a defendant's suitability for pretrial military diversion necessarily requires

discretionary judgments about which criteria or factors best determine suitability, and

both operations of discretion must be informed by the legal principles and purpose of the

statute guiding the court's actions.

1. *The Purpose of Military Diversion Is to Promote the Treatment and Rehabilitation of Eligible*, *Active Duty and Military Veterans Charged With Misdemeanor Offenses*, *Including Driving Under the Influence*

Our first step is to construe the military diversion statute.  Our goal is to "ascertain

the intent of the Legislature so as to effectuate the purpose of the law.  In determining

that intent, we consider the statute read as a whole, harmonizing the various elements by

considering each clause and section in the context of the overall statutory framework."

(*People v. Jenkins* (1995) 10 Cal.4th 234, 246.)

Here, the statute defines eligibility only with reference to the defendant's alleged

commission of a misdemeanor, his or her military status, and a listed condition related to

military service.  (§ 1001.80, subd. (a) [diversion statute "shall apply" to cases in which

defendant is charged with a misdemeanor and is both (1) a current or former member of

14

the United States military and (2) suffering from sexual trauma, traumatic brain injury, PTSD, substance abuse, or mental health problems as a result of military service].) If these initial criteria are met and the defendant consents and waives the right to a speedy trial, the court "may" place the defendant in a pretrial diversion program. (§ 1001.80, subd. (b).) It is noteworthy that the Legislature did not limit eligibility by type or category of misdemeanor crime, suggesting a broader intent than other diversion statutes which do exclude specific offenses or conduct.[8] (*People v. Cottle* (2006) 39 Cal.4th 246, 254 [" ' "[W]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" ' "].)

We infer from these initial provisions that the Legislature's primary consideration in establishing eligibility was not the type of misdemeanor involved but the suffering of a military or former military member from a traumatic condition related to his or her military service. This is consistent with the emphasis of other provisions on rehabilitative treatment under the program. Those provisions guide the trial court in program options for the military defendant and assign preference to specialized treatment programs with "a history of successfully treating veterans . . . ." (§ 1001.80, subd. (f).) They authorize the court and treatment program to collaborate with state and federal veterans affairs departments "to maximize benefits and services provided" to the veteran (*id*., subd. (g)). The dismissal of the criminal charge after program completion preserves the rehabilitated defendant's options for employment and benefits. (See § 1001.80, subd. (i) [successful diversion enables "the arrest upon which the diversion was based [to] be deemed to have

---

[8] For example, misdemeanor diversion "shall not apply" to treatment for persons convicted of driving under the influence violations (§ 1001.2, subd. (a)), and drug diversion is limited to specified drug violations involving personal use but excludes those violations involving sale, violence, or threatened violence (§ 1000, subd. (a)).

15

never occurred" and prevents it from being "used in any way that could result in the denial of any employment, benefit, license, or certificate"].)

Although section 1001.80, subdivision (a) does not purport to exclude any specific crime from eligibility for military diversion, Vehicle Code section 23640 prohibits suspending or dismissing charges of driving under the influence in exchange for participating in education or treatment for alcoholism or substance abuse. (Veh. Code, § 23640.) Conflicting appellate court decisions from 2016 prompted the Legislature to amend section 1001.80 in 2017 to clarify that military diversion is available to eligible defendants charged with misdemeanor driving under the influence or driving under the influence and causing bodily injury to another person. Section 1001.80, subdivision (*l*) thus eliminates any doubt about the Legislature's intent to include military defendants accused of misdemeanor drunk driving offenses within the scope of the military diversion statute: "Notwithstanding any other law, including Section 23640 of the Vehicle Code, a misdemeanor offense for which a defendant may be placed in a pretrial diversion program in accordance with this section includes a misdemeanor violation of Section 23152 or 23153 of the Vehicle Code." (§ 1001.80, subd. (*l*).)

Based on the statute itself, we find that the intent of military diversion is to enable trial courts to grant pretrial diversion for eligible military defendants to obtain specialized treatment for a service-related trauma or condition, with the goal for that individual to avoid the impediment of a misdemeanor record. It is evident that the principles behind military diversion and the purpose of section 1001.80—what the dissenting appellate division judge referred to as the "primary objective" of the statute—are rehabilitative, irrespective of the misdemeanor charged.

To the extent the statutory language leaves any uncertainty of the Legislature's intent, we turn to the legislative history. (See *Klein v. United States of America* (2010) 50 Cal.4th 68, 77 [noting that courts look to a statute's legislative history and the historical circumstances behind its enactment when textual analysis "fails to resolve the

16

question of [the statute's] intended meaning"].)  Courts consider materials such as committee reports and digests of the Legislative Counsel to be relevant because we "infer that all members of the Legislature considered them when voting on the proposed statute."  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 46, fn. 9.)

The legislative history of section 1001.80 shows the intent was to tailor a pretrial diversion program to the needs of active duty and military veterans who were not adequately served by then-existing diversion programs for drug offenders, non-DUI misdemeanor offenders, and misdemeanor offenders who suffered a cognitive defect. (Sen. Pub. Safety Com., Com. on Sen. Bill No. 1227 (2013-2014 Reg. Sess.) Feb. 20, 2014, pp. 1-2.)  The purpose of these diversion statutes, noted earlier, is rehabilitation. (*On Tai Ho*, *supra*, 11 Cal.3d at p. 61; *Bishop*, *supra*, 11 Cal.App.4th at p. 1130; *Morse*, *supra*, 13 Cal.3d at p. 158 [interpreting the Legislature's "rehabilitative purpose" for diversion statute].)  The definition of "pretrial diversion" in section 1001.80, subdivision (k)(1) uses the same language as section 1001.1.  The drafters' intent was to extend the "well established" benefits of California's pretrial diversion programs to veterans, enabling the military defendant to "avoid the consequences of a conviction" (Sen. Pub. Safety Com., Com. on Sen. Bill No. 1227 (2013-2014 Reg. Sess.), *supra*, p. 5) and to access "appropriate treatment . . . programs with a history in dealing with the type of trauma the veteran has suffered and in dealing with veterans" (*id*. at p. 5).

The legislative history of the bill that amended section 1001.80 in 2017 also emphasized rehabilitation.  Senate Bill No. 725 was enacted as an urgency statute in order "to resolve conflicting interpretations of existing law . . . that may affect the rights and liberties of veterans at the earliest time possible . . . ."  (Stats. 2017, ch. 179, §1, p. 2045.)  The Legislative Counsel's Digest for the bill described the existing diversion law in terms of the trial court's authority "to refer a military defendant to services *for treatment*" and stated that under the amendment a defendant may be placed in a pretrial diversion program for "a misdemeanor violation of driving under the influence or driving

17

under the influence and causing bodily injury." (Legis. Counsel's Dig., Sen. Bill No. 725 (2017-2018 Reg. Sess.) 1 Stats. 2017, p. 2043, italics added.)

Committee analyses framed the need to amend the statute in terms of public safety. These documents emphasized the significant percentage of military defendants seeking diversion who were charged with driving under the influence violations, the nexus between substance abuse and service-related traumatic conditions, and the need for timely and appropriate intervention to treat veterans and reduce recidivism. The attention to these issues was not cursory; it formed the bulk of the argument for the amendment. For example, the Senate Committee on Public Safety cited data showing that "California courts are experiencing requests for military diversion from veterans charged with violations of Vehicle Code sections 23152 and 23153 in significantly high numbers" and explained "that timely and appropriate treatment for the conditions underlying substance abuse yields effective results and greatly reduces recidivism." (Sen. Pub. Safety Com., Com. on Sen. Bill No. 725 (2017-2018 Reg. Sess.) Feb. 17, 2017, p. 3.)

The Senate Rules Committee analysis similarly stated, "Data today shows that at least 1/3 of all persons who seek military diversion are charged with violations of Vehicle Code section 23152/23153 . . . . DUI's make up the most common offenses committed by veterans with mental health conditions—which is expected since self-medication is widely known to be connected to symptoms of mental health conditions like post traumatic stress disorder (PTSD) and traumatic brain injury (TBI). Any incentive that gets the veteran into treatment helps protect the public safety." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 725 (2017-2018 Reg. Sess.) as amended Jul. 17, 2017, p. 5.) The Assembly analysis referenced the same statistic for the percentage of persons seeking military diversion and stated that " 'diversion and treatment of veterans with behavioral health conditions stemming from their military service is important to the safety and health of our veterans and communities. Untreated behavioral health conditions have a strong propensity to lead to self-medication with

18

alcohol and drugs.' " (Assem. Pub. Safety Com., Analysis of Sen. Bill No. 725 (2017-2018 Reg. Sess.) as introduced Feb. 17, 2017, p. 3.)

This legislative history broadly reinforces the rehabilitative purpose of the military diversion statute and shows an unambiguous intent to make pretrial diversion available to military personnel whose suffering from service-related traumatic conditions manifests in substance or alcohol abuse and, relatedly, in violations of Vehicle Code sections 23152 or 23153. This history does not, however, any more than the statutory text itself, specify criteria for the trial court to consider. Since " '[a]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue' " (*Alvarez*, *supra*, 14 Cal.4th at p. 977), we conclude that the principles of access to treatment and potential for rehabilitation must inform the exercise of discretion under section 1001.80.

> 2. *The Trial Court's Denial of Wade's Pretrial Diversion Request Based Chiefly on the Nature of the Offense Conflicts With the Legislature's Express Intent to Include Driving Under the Influence Offenses Within the Scope of the Military Diversion Statute*

We next consider whether the trial court abused its discretion by denying Wade's request for pretrial diversion based upon considerations that were inconsistent with the rehabilitative purpose of the military diversion statute. Two questions emerge. First, did the court rely on improper criteria in considering the information sheet factors? Second, did the court's decision, based primarily on the "inherently dangerous" driving under the influence violation and on Wade's blood alcohol concentration, contradict the Legislature's intent to include driving under the influence violations within the scope of the statute? An affirmative answer to either question would constitute prejudicial legal error. (*Farmers*, *supra*, 218 Cal.App.4th at p. 106 ["[A] discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal"].)

19

As to the first question, we are unable to conclude from the record in this case that the trial court's consideration of the information sheet factors alone constituted legal error. We noted earlier that the Monterey County Superior Court compiled the information sheet in collaboration with the local offices of the district attorney and the public defender. The 29 "factors of con[s]ideration in granting or denying military diversion" are derived from the felony sentencing guidelines set forth in California Rules of Court, rules 4.414 (criteria affecting probation), 4.421 (circumstances in aggravation), and 4.423 (circumstances in mitigation). These rules apply to felony convictions under the state's determinate sentencing system. (*Id*., rule 4.403.) They guide the sentencing court's exercise of discretion in deciding whether to grant probation, or if probation is denied, whether to impose the upper, middle, or lower term. (*Id*., rule 4.420; *People v. Sandoval* (2007) 41 Cal.4th 825, 836.)

Setting aside for a moment the trial court's stated reasons for denying pretrial diversion, there is no question that the information sheet factors, on their face, are driven by different considerations than the military diversion statute. The rehabilitative purpose of military diversion requires the trial court to assess whether an eligible candidate might benefit from specialized treatment for veterans and potentially complete diversion in furtherance of the statutory objectives. But under the determinate sentencing law, the trial court considers factors relating to both the crime and the defendant to "select the term which, in the court's discretion, best serves the interests of justice." (§ 1170, subd. (b).) These pertain broadly to the severity of the crime, victim and community impact, and the defendant's personal culpability. (See *People v. Black* (2007) 41 Cal.4th 799, 816 [aggravating circumstances "serve as a consideration in the trial court's exercise of its discretion in selecting the appropriate term from among those authorized for the defendant's offense"].) The information sheet factors essentially duplicate these considerations, none of which directly addresses a defendant's disposition for "benefiting

20

from the treatment and services provided under the diversion program." (§ 1001.80, subd. (c).)

The fact that the information sheet factors reflect considerations more pertinent to felony sentencing than to a defendant's treatment and rehabilitation does not make them improper or irrelevant to the court's analysis, however. Many of the criteria included in the information sheet—including, among others, the nature of the charges, whether the defendant has engaged in violent conduct that presents a serious danger to society, the defendant's prior record, and whether the defendant voluntarily acknowledged wrongdoing—may provide the diversion court with valid insight into an eligible defendant's disposition for rehabilitation under section 1001.80. We accordingly reject any blanket characterization of the information sheet factors as improper criteria. What is determinative on a case by case basis is whether the trial court's consideration of particular criteria was guided by the appropriate legal principles. (See *Carmony*, *supra*, 33 Cal.4th at p. 377.)

Here, the trial court relied on the rubric provided by the information sheet, creating a record of its considerations. Though the court suggested it was not strictly bound to the information sheet factors and that it had reviewed the submissions of Wade's counsel, its explanation for denying pretrial diversion gave no indication that it was informed by the rehabilitative principles that define the military diversion statute. On this point, we agree with the appellate division's dissent, which found nothing in the record to demonstrate, "either explicitly or by inference, that the trial court based its discretion with the proper primary objective in mind."[9] We conclude that the trial court's

---

[9] We do not concur with the appellate division majority opinion's application of the principle of appellate review to "accord all presumptions in favor of the judgment" on this point because, as Wade points out, the record is not silent about the factors the court considered. The presumption that the judge "knows and applies the correct statutory and case law" and can "recognize those facts which properly may be considered in the judicial decisionmaking process" (*People v. Coddington* (2000) 23 Cal.4th 529, 644, (continued)

considered criteria—including the "inherently dangerous" nature of the offense, Wade's 0.16 blood alcohol concentration, his "nonpassive" role in committing the offense, and his purported "bad driving" at the time of the offense—was not an exercise of informed discretion because there is no basis on which to infer that the court related those criteria to Wade's suitability for treatment and rehabilitation.

But even if the trial court's stated considerations supported an inference that the court applied the information sheet factors in a manner consistent with the purpose and principles of the military diversion statute, the court's specific findings based on the misdemeanor driving under the influence charges lead to an untenable result. The court cited public safety as the basis for rejecting Wade's request, reasoning that "driving under the influence while impaired is an inherently dangerous type of offense, especially when we're talking about blood alcohols that are double the legal limit" and "[t]he driving was bad driving in this particular case."[10] In treating the dangerous nature of Wade's offense, aggravated by his high blood alcohol concentration and "bad driving" as dispositive, the

overruled on other grounds by *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13) operates when the record is silent. (*People v. Coddington*, *supra*, at p. 645; see *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913 [in the absence of contrary evidence, the reviewing court is entitled to presume that the trial court properly followed established law].) But here, the court stated its considerations on the record, and none pertained to rehabilitative potential.

[10] The trial court's reasoning in full is as follows: "The Court has considered the fact that you don't have a record. The Court has also considered and reviewed the letters presented by counsel. But when the Court looks at the nature of the charge, driving under the influence—and I should indicate . . . we do have a driving under the influence for two in our particular program as we speak. But driving under the influence while impaired is an inherently dangerous type of offense, especially when we're talking about blood alcohols that are double the legal limit. And . . . this was a .16. The driving was bad driving in this particular case. So the Court will take a look at that particular factor. Also the fact that the defendant was not a passive participant, but he did drive a motor vehicle while under the influence of alcohol. He decided to drink alcohol and decided to drive a motor vehicle. So that being said, in this particular case, the Court believes that public safety would dictate that this particular case not come within 1001.8[0], respectfully."

court contradicted the Legislature's explicit intent in amending section 1001.80 to ensure that military defendants charged with misdemeanor driving under the influence are not excluded from consideration for pretrial diversion. (§ 1001.80, subd. (*l*).)

As noted in our mention of the legislative history, the Legislature viewed pretrial diversion for active duty and military veterans as a critical measure to improve outcomes for the substantial percentage of military defendants charged with driving under the influence offenses. (See *ante*, part II.C.1.) The legislative history specifically addressed the reality of military veterans turning to substances like alcohol to self-medicate their service-related conditions. And as evidenced by the inclusion of misdemeanor driving under the influence resulting in bodily injury to another person, the Legislature was aware of the inherent dangers to public safety, which naturally are aggravated by an offender's level of intoxication. Notably, however, section 1001.80, subdivision (*l*) does not impose a limit or carve out any exception based on blood alcohol concentration. (Cf. Veh. Code, § 23578 [authorizing sentencing enhancement for driving under the influence conviction with blood alcohol concentration of 0.15 or more].)

The Legislature's clear intent to make the pretrial military diversion program available to eligible, active duty military and veterans who are charged with driving under the influence, with no stated limits based on blood alcohol concentration or the inherently dangerous nature of the offense, severely limits the trial court's discretion to deny military diversion for an eligible defendant on those grounds. Simply put, the trial court in this case did not have discretion to deny Wade's request based on the inherently dangerous nature of driving while intoxicated, because the Legislature implicitly considered the commonly occurring features of DUI offenses but nevertheless elected to include them in the statutory program without restriction.

It also appears that the trial court may have relied on inaccurate facts when it based its decision in part on "bad driving in this particular case." According to the prosecutor's summary at the hearing, Wade was driving slowly on the highway and

23

weaving in the lane; he also attempted to pull to the shoulder at an unsafe location. This is inconsistent with the People's written opposition brief, in which they stated that Wade posed a "serious risk to the people of the community given his . . . dangerous driving resulting in a collision, and decision to leave the scene of the collision." Wade sought to correct the People's written misstatements in his later-filed declaration to the appellate division. The likelihood that the "bad driving" determination was derived from inaccurate statements in the written opposition further undermines the validity of the trial court's exercise of discretion on that basis.

Our holding is a narrow one; it does not limit the trial court's discretion to decide whether a military defendant is suitable for pretrial diversion under section 1001.80 or restrict the court's authority to identify factors or criteria relevant to its inquiry. However, in the context of the military diversion statute, the court's discretionary determinations about who is suitable to participate in pretrial diversion and how to evaluate suitability may not ignore or contravene the legislative intent to include misdemeanor driving under the influence offenses within the scope of section 1001.80. Because the determination that Wade's case did "not come within [section] 1001.8[0]" was antithetical to the Legislature's purposeful inclusion of DUI offenses in the statute, we conclude that the trial court abused its discretion in denying Wade's diversion request on that basis. Accordingly, we will grant Wade's petition for writ of mandate.

### D.    Remedy

Wade asks this court to grant writ relief and to order the trial court to admit him into the military diversion program based upon the merits of his request. The People argue that the requested relief is improper. Based on our conclusion that the trial court failed to exercise its discretion in conformity with section 1001.80, the proper remedy is for the trial court to reconsider the diversion request, bearing in mind the statutory

24

principles and purpose and the legislative intent not to exclude eligible misdemeanor driving under the influence offenders from consideration for military diversion.

## III.    DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order of September 27, 2017, denying Wade's request for placement in the military diversion program. On remand, the superior court shall exercise its discretion in conformity with the principles articulated here to decide whether Wade is a suitable candidate for pretrial diversion, treatment, and rehabilitation. The temporary stay order is vacated.

_____
                                    Grover, J.



WE CONCUR:




_____
          Greenwood, P.J.




_____
          Elia, J.




<u>Wade v. Superior Court</u>
H045813

| | |
|---|---|
| Trial Court: | Monterey County Superior Court<br>Superior Court No. 17CR001569 |
| Trial Judge: | Hon. Pamela L. Butler |
| Counsel for Petitioner:<br>Andrew M. Wade | Strong Appellate Law<br>Jeanine G. Strong |
| Counsel for Real Party in Interest:<br>The People | District Attorney for Monterey County<br>Dean D. Flippo<br>Cristina Johnson<br>Deputy District Attorney |
| Counsel for Respondent:<br>Monterey County Superior Court | No appearance for respondent |

Wade v. Superior Court
H045813