Filed 10/3/25  P. v. Torres CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B327809 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA451597) |
| v. | |
| VICTOR TORRES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Shelly B. Torrealba, Judge.  Conditionally reversed and remanded with instructions.

Aurora Elizabeth Bewicke, by appointment of the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Susan S. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant Victor Torres appeals the denial of his pretrial motion for mental health diversion of his criminal prosecution. He argues that amendments to the mental health diversion statute, passed after the trial court denied his motion and while this appeal has been pending, warrant remand and reconsideration of his motion. We agree and reverse and remand the matter to the trial court with instructions to reconsider the motion under the standards set forth in the recent amendments to the law.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Underlying Facts

These facts are taken from one of our prior opinions in this matter. On the evening of October 15, 2016, Torres approached two brothers, Cesar and Harvin C. He asked them what neighborhood they were from to which Harvin responded, "Nicaragua." Torres asked whether "Shorty" was in a van the brothers had just exited. Cesar told Torres not to look into the van. Torres then punched Cesar twice and threw him to the ground. Torres left the scene.

The brothers then went over to their family's apartment building. They were standing in the building's courtyard when Torres returned with a gun. He pointed the gun at Cesar and Cesar's cousin. He then shot the gun once into the air. Unnamed individuals asked Torres to leave, which he did. Torres was later arrested and denied shooting anyone. (*People v. Torres* (Mar. 1, 2018, B282426) [nonpub. opn.].)

II.     The Charges and Jury Verdict

On February 2, 2017, the People filed a two-count amended information charging Torres with assault with a semi-automatic firearm and discharging that firearm with gross negligence. (Pen. Code, §§ 245, subd. (b) & 246.3, subd. (a).)[1]  The information also alleged Torres personally used a firearm in violation of section 12022.5; committed the crime for the benefit of a criminal street gang in violation of section 186.22, subdivision (b)(1); and had sustained a second degree *Estes*[2] robbery strike prior, a serious felony prior, and a prison prior in violations of sections 667, subdivisions (a)(1), (b)–(j); 1170.12; and 667.5, subdivision (b).

A jury convicted Torres of both counts, found true the personal use of a firearm allegation, and acquitted Torres of the gang allegations.  At the sentencing hearing the trial court found true the prison prior, strike prior, and serious felony conviction allegations.  Torres was sentenced to 22 years, four months in prison.

Torres filed two successful rounds of appeals, resulting in a remand of his conviction to the trial court to consider his eligibility for mental health diversion.  (*People v. Torres*, *supra*, B282426; *People v. Torres* (Oct. 10, 2019, B292495) [nonpub. opn.].)

On May 31, 2022, Torres formally moved for mental health diversion.  On August 15, 2022, the trial court denied the motion, finding him not eligible or suitable for section 1001.36 diversion.  The trial court sentenced Torres to 16 years in state prison,

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     *People v. Estes* (1983) 147 Cal.App.3d 23.

3

consisting of the midterm of six years on the assault count, doubled for the strike, plus four years for the firearm enhancement.  A concurrent midterm sentence of four years was imposed on the second count.

This appeal followed.

## DISCUSSION

I.    <u>Standard of Review</u>

A trial court's ruling on a motion for mental health diversion is reviewed for abuse of discretion, and factual findings are reviewed for substantial evidence.  (*People v. Moine* (2021) 62 Cal.App.5th 440, 449 (*Moine*); *People v. Oneal* (2021) 64 Cal.App.5th 582, 588.)  A trial court has " 'broad discretion to determine whether a given defendant is a good candidate for mental health diversion.' " (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.)  "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Moine*, at p. 449; *People v. Bunas* (2022) 79 Cal.App.5th 840, 848–849 (*Bunas*).)

II.    <u>Applicable Law</u>

Section 1001.36 authorizes pretrial mental health diversion for defendants with qualifying mental health disorders.  (*People v. Frahs* (2020) 9 Cal.5th 618, 626–627 (*Frahs*).)  To qualify for mental health diversion, a defendant must satisfy the eligibility requirements set out in section 1001.36, subdivision (b) and then satisfy the suitability requirements set out in section 1001.36, subdivision (c).  (§ 1001.36, subds. (b), (c).)

4

It is one of the two eligibility requirements that changed post-appeal that is relevant to Torres's appeal. The two requirements are set forth in section 1001.36, subdivision (b)(1) and (2). First, the court must find defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder and pedophilia. (§ 1001.36, subd. (b)(1).) "Evidence of the defendant's mental disorder shall be provided by the defense and shall include a diagnosis or treatment for a diagnosed mental disorder within the last five years by a qualified mental health expert. In opining that a defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence." (*Ibid*.)

Second, the court must find "defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(2).) This is the requirement that changed while this appeal has been pending. Effective January 1, 2023, Senate Bill No. 1223 (2021–2022 Reg. Sess.) amended the statute to add a presumption that "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense. A court may consider any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts,

witness statements, statement by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense."  (§ 1001.36, subd. (b)(2).)

Even if a defendant meets the threshold eligibility requirements, "a trial court may still exercise its discretion to deny mental health diversion if it finds that the defendant or the offense are not *suitable for diversion*."  (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888, italics added (*Qualkinbush*).)  A defendant is suitable under the statute if the defendant's symptoms are amenable to treatment; defendant consents to diversions and waives the right to a speedy trial; defendant agrees to comply with treatment as a condition of diversion; and defendant will not pose an unreasonable risk of danger to public safety by likely committing a "superstrike" if treated in the community.  (§ 1001.36, subd. (c)(1)–(4).)

In determining a defendant's suitability for mental health diversion, a trial court may not rely on general sentencing objectives set forth in rule 4.410 of the California Rules of Court[3]

---

[3]    The general objectives of sentencing include: protecting society; punishing the defendant; encouraging the defendant to lead a law-abiding life in the future and deterring him from future offenses; deterring others from criminal conduct by demonstrating its consequences; preventing the defendant from committing new crimes by isolating him for the period of incarceration; securing restitution for the victims of crime; achieving uniformity in sentencing; and increasing public safety by reducing recidivism through community-based corrections programs and evidence-based practices.  (Cal. Rules of Court, rule 4.410(a).)

and must consider the primary purposes of the mental health diversion statute as set forth in section 1001.35. (*Qualkinbush, supra,* 79 Cal.App.5th at pp. 890–892; *Bunas, supra,* 79 Cal.App.5th at pp. 865–866.)

The stated purpose of this legislation is to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care settings, and to provide mental health rehabilitative services. (See *Qualkinbush, supra,* 79 Cal.App.5th at p. 886 [discussing § 1001.36].) The Legislature intended the mental health diversion program to apply as broadly as possible. (*Frahs, supra,* 9 Cal.5th at p. 632.) The court "must treat the matter as if the charges against the defendant have not yet been adjudicated; the court is not sentencing the defendant." (*Qualkinbush,* at p. 892, fn. 11.)

If the defendant successfully completes diversion, including having in place a plan for long-term mental health care, the criminal charges shall be dismissed. (§ 1001.36, subd. (h).) However, if after diversion is granted, a qualified mental health expert concludes the defendant "is performing unsatisfactorily in the assigned program," the court shall, after notice to defendant, hold a hearing to determine whether criminal proceedings should be reinstated or treatment modified. (*Id.,* subd. (g)(4)(A).)

III.   Analysis

Under the newly amended statute, the trial court was required to find Torres's mental disorder a substantial factor in the commission of his crimes absent clear and convincing evidence to the contrary. Torres asks that we remand the matter

for an evidentiary hearing governed by section 1001.36's new presumption.

Because Torres's judgment is not final, recently amended section 1001.36 applies retroactively to his case. (*Frahs, supra,* 9 Cal.5th at p. 624; *People v. Doron* (2023) 95 Cal.App.5th 1, 6.) Torres is entitled to the trial court's informed discretion on his motion for mental health diversion. (*Doron,* at p.10.) A court unaware of the scope of its discretionary powers can no more exercise that informed discretion than one whose decision is or may have been based on misinformation regarding a material aspect of a defendant's record. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

The trial court specifically denied Torres's motion for mental health diversion because it found, without considering the presumption, his mental health diagnosis was not substantially related to his criminal conduct. Torres is entitled to have his motion heard and decided under the newly-enacted eligibility standards.

We also find that the trial court was apparently misinformed about the facts of the case when it found Torres unsuitable for diversion. This finding as well must be reconsidered. The court concluded the present offense was gang related, demonstrating a high degree of dangerousness. The court made this finding notwithstanding that the jury had acquitted Torres of the gang enhancement. (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1018 [trial court may not turn acquittals and not-true enhancement findings into their opposites at a post-conviction hearing].)

8

Second, the trial court found that the present offense was not "the kind of conduct that the mental health diversion program is intended for." Section 1001.36, subdivision (d) sets out the offenses which are excluded from eligibility for diversion. The offenses of conviction here—grossly negligent discharge of a firearm and armed assault not resulting in injury—are not on that disqualifying list. (See *Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 716–717 [court abused its discretion in concluding DUI was disqualifying offense].)

Finally in finding Torres unsuitable, the court noted it was operating under the misimpression that Torres had pistol whipped the victim with a gun immediately before shooting that same gun into the air. This was, indeed, unsupported by the record. This glaring factual error establishes that the suitability finding is based on an erroneous factual basis and must be vacated. (*Moine*, *supra*, 62 Cal.App.5th at p. 449.)

Finally, we conclude the court's finding that Torres poses an unreasonable risk to public safety or, put another way, that he is too dangerous to be treated in the community because he would commit a new violent super strike, also unsupported by the evidence. Super strikes are murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, any serious or violent felony punishable by death or life imprisonment, or any sexually violent offenses or sexual offense committed against minors under the age of 14. (*People v. Jefferson* (2016) 1 Cal.App.5th 235, 242; § 667, subd. (e)(2)(C)(iv).)

Here, the trial court found Torres was likely to commit a super strike offense. (See *People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1310; *Moine, supra*, 62 Cal.App.5th at

9

p. 450 ["a trial court necessarily must find the defendant is 'likely to commit a super-strike offense' " to deny diversion on this ground; in other words, "the risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies"].)  There was no evidence in the record to support such a finding.  It is undisputed appellant's prior criminal history, consisting of driving under the influence, fraud, forgery, possession and sales of drugs and theft, does not include violent or sexually violent convictions, let alone a super strike. (*Hoffman* at p. 1310 [finding that the record did not support a finding of dangerousness under § 1170.18 where the defendant had no prior criminal history and her recent charges for 18 counts of felony forgery and one count of grand theft of property were not super-strike offenses].)  His prior "strike" offense was an *Estes* second degree robbery for stealing beer from a grocery store.

Moreover, it is significant that the facts of this incident include appellant leaving the scene when told to do so and firing one shot into the air despite the number of people confronting him.  (See *Whitmill, supra,* 86 Cal.App.5th at p. 1153 [court abused its discretion in basing its finding of dangerousness on firing a single shot into the air].)  These facts are not substantial evidence that appellant is likely to commit a super strike offense in the future.

Because there was no substantial evidence to support the trial court's finding that appellant posed an unreasonable risk of committing a super strike if treated in the community, and because the trial court imposed incorrect standards in denying diversion, we conclude the court erred in denying appellant's motion for pretrial mental health diversion.  We pause to note at

10

this juncture that Torres has challenged the accuracy of the abstract of judgment in reciting custody credits and fines and fees not imposed at his sentencing hearing.  Upon remand the trial court shall take up these issues in the first instance.

## DISPOSITION

The judgment of conviction is conditionally reversed with directions to the trial court to hold a new evidentiary hearing on appellant's motion for pretrial mental health diversion and, if the motion is denied, to hold a resentencing hearing.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.