Filed 10/20/20  P. v. Alva CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LUCIA PLIEGO ALVA,<br><br>Defendant and Appellant. | D075155<br><br><br><br>(Super. Ct. No. SCD275021) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Affirmed.

Nancy Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Lucia Pliego Alva contends that the trial court failed to exercise informed discretion when it refused the jury's request for a readback of defendant's closing argument.  She also claims the trial court violated her

due process rights by imposing fines and fees without first holding an ability-to-pay hearing.  We affirm the judgment, as we explain below.

BACKGROUND

*Procedure*

A jury convicted defendant Lucia Pliego Alva of attempted premeditated murder (Pen. Code,[1] §§ 664, 187, subd. (a), & 189).  It also found true the allegations that she personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)), and that she personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)).  The court sentenced her to a determinate term of four years plus a consecutive term of life in prison with the possibility of parole.  Defendant filed a timely notice of appeal.

*Facts*

Defendant had a dating relationship with Jose C. for several years.  The couple lived with defendant's family, and had close ties with Jose's family, who lived a few blocks away.  Jose's mother, Meriam L., 11-year-old sister, Ruby, his brother Jason C., and Jason's girlfriend, L.F., all lived together in an apartment on Van Dyke Avenue.

On Thanksgiving Day 2017, about four weeks before the crime at issue, defendant told Jason that L.F. had been unfaithful to him.  L.F. and defendant, who were both intoxicated, got into a physical fight, in which defendant was hurt and L.F. was not.  At the conclusion of the fight, defendant's face was "bleeding pretty badly."  As she was walking away, defendant said, "I'm going to shank that bitch," meaning L.F.

On December 20, 2017, defendant went to the Van Dyke apartment to pick up Ruby and take care of her for the day.  L.F. was asleep in the bedroom.  As Ruby and defendant left the apartment, Ruby started to lock

---

[1]    Further statutory references are to the Penal Code.

2

the outside screen door. Defendant grabbed the door and said she would lock it. However, Ruby heard the door click as if it had been unlocked. Ruby and defendant walked downstairs and got into defendant's truck, which was parked in the alley outside the apartment. Defendant said she had to go back to the apartment and use the bathroom. Ruby stayed in the truck while defendant returned to the apartment, then came back to the truck a few minutes later. Defendant looked and acted normally, not crying or scared.

Actually, defendant went into the apartment, walked into the bedroom, called L.F. a bitch, and stabbed her in the back as L.F. lay asleep on the bed. L.F. jumped up and grabbed her phone. Defendant pepper-sprayed L.F. and stabbed her in the stomach. L.F. tried to run away but fell to the floor. She was having trouble breathing. L.F. admitted she had a knife in the room, but she had no chance to retrieve it to fight back.

L.F. was able to call 911 as she was lying on the floor, although she felt air escaping from her back and was struggling to breathe. She was in pain. Her eyes were burning from the pepper spray. An officer heard L.F. say, "It was Lucia [defendant]," as she was being taken from the apartment to an ambulance. L.F. also told an officer riding in the ambulance with her that defendant was the assailant. She said she was sleeping and defendant "just stabbed me in bed." When police interviewed defendant later that day, defendant denied hurting L.F. or even seeing L.F. She said she did not go inside L.F.'s apartment.

L.F. had a stab wound in her abdomen and a stab wound in her back. She was transported to a hospital where she had emergency surgery. L.F. had a collapsed lung, a life-threatening wound to her abdomen, and life-threatening injuries to the blood vessels that supply blood to her intestinal tract. She remained in the intensive care unit for seven days.

3

Defendant testified in her own defense. She said she was afraid of L.F. because she had seen L.F. physically fight with others. She knew that L.F. had several knives and always carried a knife with her. She said that L.F. gave her two black eyes, a split lip and broken nose during the Thanksgiving fight. Defendant thought that their relationship had calmed down after that fight, however.

Defendant said that when she returned to the apartment after picking up Ruby, L.F. opened the door for her. When defendant went to the bathroom, L.F. was holding a knife and yelled that defendant was "not going to get away with this." According to defendant, L.F. advanced on defendant with a knife. Defendant grabbed her arms, they fell on the bed, and defendant got control of L.F.'s knife. She stabbed L.F. in the stomach, then L.F. stood up and reached for her purse. Defendant said she believed L.F. was going for a knife, so she stabbed L.F. in the back to protect herself.

Defendant said she did not call for assistance for L.F. because she was afraid of getting in trouble and did not know what to do. She admitted she lied to the police when they interviewed her, because she did not trust law enforcement.

## DISCUSSION

### 1. Readback of Closing Argument

Defendant contends that the trial court failed to exercise informed discretion when it denied the jury's request that defendant's closing argument be read back to it.

A. *Proceedings Below*

The jury sent out a note on the second morning of deliberations, asking if it could listen to the defense closing argument. Defense counsel said it was up to the court's discretion and defense had no objection. The prosecutor said the jury was not entitled to readback of the argument because it was not evidence. She also said the court would have to read the prosecutor's closing argument as well as the defense counsel's argument. The court read the statute on information for a deliberating jury—section 1138—and relevant cases. It stated, " 'however because the arguments of counsel are not evidence, section 1138 does not give the jury an absolute right to rehear argument. Instead such a *request is left to the sound discretion of the trial court.*' " The court was quoting from an unpublished case and also cited *People v. Gurule* (2002) 28 Cal.4th 557, 648–649 (*Gurule*), *People v. Pride* (1992) 3 Cal.4th 195, 266 (*Pride*); and *People v. Gordon* (1990) 50 Cal.3d 1223, 1257–1258, 1260 (*Gordon*), overruled on other grounds in *People v. Edwards* (1991) 54 Cal.3d 787, 835. The court decided to "rely on the [*Gurule*] case and also on the plain meaning of [section] 1138." The *Gurule* court held that the trial court did not abuse its discretion when it denied a jury request to read back closing argument. (*Gurule*, at p. 649.) The court declined the request because the argument was not evidence.

After the court announced its decision, defense counsel asked the court not to limit its response to defendant's closing argument, but to tell the jury that closing arguments in general were not evidence. The court agreed, and responded to the jury: "No, the closing statements of the People and the [defense] are not evidence. You are entitled to readback of evidence only, i.e.

5

the testimony of witnesses." The jury reached a verdict 10 minutes after it was told the closing argument would not be read back to it.

   B. *Analysis*

      1. Forfeiture

The Attorney General contends that defendant forfeited her claim of error because counsel failed to object to the language in the court's response to the jury, and in fact assented to the language. We disagree. Defense counsel adequately stated his position and preserved the issue of the informed discretion of the court when he said, "I think that is up to the court's discretion. It's information that the jury is requesting[.[2]] The defense is fine if they listen to the statement again." A claim of abuse of discretion is not forfeited when counsel advises the court of its permissible choices so that error can be prevented or corrected in the trial court. (See *People v. Scott* (1994) 9 Cal.4th 331, 353.) Defense counsel's statement notified the court that it had discretion to read back the closing argument and that defense counsel approved such a readback. The court had the opportunity to correct any errors or to consider its discretion. The claim is not forfeited. (*Ibid.*)

Further, an objection is not forfeited when counsel makes the best of a bad situation. The court had already ruled that it was not going to read back the closing argument. Defense counsel asked the court to state that neither prosecution nor defense closing argument is evidence, rather than risk having the jury believe that only defense closing arguments could not be read back. Defense counsel did not forfeit his objection by asking the court to provide a balanced response to the jury.

---

[2]    This period is not in the reporter's transcript. The language appears as a run-on sentence that is hard to decipher. It reads clearly when the period is added. We interpret the transcription in the manner that makes the most sense.

6

### 2. Standard of Review

We review the court's response to the jury request for an abuse of discretion. (*Gurule*, *supra*, 28 Cal.4th at p. 649.) A court abuses its discretion if its decision is arbitrary, capricious, or outside the bounds of reason. (*Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 708–709.) If the court is unaware of the full scope of its discretion, the court has erred and its decision is subject to reversal. (*Ibid.*) "Simply stated, 'an abuse of discretion arises if the trial court based its decision on impermissible factors [citation] or on an incorrect legal standard.' " (*Ibid.*) "In reviewing a trial court's order for an abuse of discretion, we presume the order is correct, indulge all intendments and presumptions to support it on matters as to which the record is silent, and the appellant bears the burden to affirmatively show error. [Citation.] 'The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary.' [Citation.]" (*People v. Allen* (2019) 41 Cal.App.5th 312, 330.)

### 3. Discussion

Defendant contends the court was not aware that it could read back closing argument. Error was found when the trial court did not know that it had inherent authority to authorize readback of closing argument and thought that readback was strictly limited to evidence. (*People v. Sims* (1993) 5 Cal.4th 405, 453 (*Sims*), overruled on another ground in *People v. Storm* (2002) 28 Cal.4th 1007, 1031–1032.) The court here, however, was aware of its inherent authority to read back closing argument if it chose to do so. Defense counsel advised the court of its discretion and the court stated that the " '*request is left to the sound discretion of the trial court.*' " The court is not required to state out loud that it is exercising its discretion or the

weighing process it goes through when making a discretionary decision. "[F]ailure to state reasons for a discretionary decision does not constitute, by itself, an abuse of discretion." (*In re Richard E.* (1978) 21 Cal.3d 349, 354.)

Defendant also contends that she was deprived of a meaningful right to present a complete defense, as guaranteed by the Sixth and Fourteenth Amendments. The *Gurule* court found no federal constitutional error in failing to let the jury hear a readback of the closing argument if defense counsel was able to make a full closing argument before the jury. Defense counsel's ability to fully and fairly participate in the defense is not significantly diminished by failing to read back the argument to the jury during deliberations. (*Gurule, supra*, 28 Cal.4th at p. 649.) Defendant contends the failure to read back closing argument was a "de facto limitation on the defense closing argument" because this was a serious case. No error was found in *Gurule*, however, which was also a serious case because the defendant received the death penalty there.

Defendant contends that the court should have exercised its discretion to permit the readback. We do not overrule a trial court's exercise of discretion, however, unless it exceeds the bounds of reason or otherwise results in a miscarriage of justice. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) The trial court did not abuse its discretion.

2. <u>Fines and Fees</u>

The probation officer recommended a restitution fine of $10,000 (§ 1202.4, subd. (b)); a $40 court operations assessment (§ 1465.8); a $30 criminal conviction assessment fee (Gov. Code, § 70373); and a $154 criminal justice administration fee (Gov. Code, § 29550.1). Defense counsel asked the

8

court to reduce the restitution fine.[3]  The court imposed a reduced restitution fine of $1,200, an equal suspended parole revocation fine (§ 1202.45), and the other fees as provided in the presentence report.  The court ordered these fines and fees to be paid pursuant to section 2085.5  Section 2085.5 provides for payment of fines from an incarcerated defendant's prison wages and trust account.  Defendant did not object to the assessments and did not ask for an ability-to-pay hearing.

Defendant contends that her due process rights were violated by the court's failure to hold an ability-to-pay hearing before imposing fines and fees.[4]  Defendant forfeited this argument, however, by failing to raise it in the trial court.  She asked the court to lower the restitution fine, but did not object to the reduced fine of $1,200, which was still above the statutory minimum of $300.  Defendant did not request an ability-to-pay hearing, claim she was indigent, or provide any other reason why the restitution fine was too high.  She did not object to the other fees and assessments, either.

Section 1202.4, subdivision (c) permitted the court to consider the defendant's inability to pay when it imposed a restitution fine greater than the $300 minimum.  "The California Supreme Court has repeatedly held that when a court imposes fees and/or fines pursuant to statutes that specifically include ability to pay findings, the defendant must raise an objection at the

---

[3]    Defendant was on probation for a misdemeanor when she committed this crime.  The court terminated probation with credit for time served, and deemed all the fees and fines in that case to have been satisfied, without any such request by defendant.

[4]    The issue of whether a trial court must consider a defendant's ability to pay before imposing fines, fees, and assessments is pending before our Supreme Court.  (See *People v. Kopp* (2019) 38 Cal.App.5th 47, rev. granted Nov. 13, 2019, S257844.)

9

sentencing hearing or forfeit the appellate claim that the court failed to make such a finding or there was no evidence of the defendant's ability to pay the imposed amounts." (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1073 (Aviles); see also *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1032–1033; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154.) The court imposed a restitution fine of $1,200, higher than the $300 minimum. "Given that the defendant is in the best position to know whether he has the ability to pay, it is incumbent on him to object to the fine and demonstrate why it should not be imposed." (*Frandsen*, at p. 1154.) Defendant has forfeited her claim of error by failing to request an ability-to-pay hearing on the restitution fine. (*Ibid.*) Defendant forfeited her objections to the other fees and assessments because she did not object to them and did not request an ability-to-pay hearing on the restitution fine. If defendant accepted the restitution fine of $1,200, she cannot complain about the additional, lesser fees and fines. (See *Gutierrez*, at p. 1033.)

Moreover, any possible error was harmless beyond a reasonable doubt because defendant has the ability to pay the fine and fee from her prison wages during her lengthy prison term. (*Aviles*, *supra*, 39 Cal.App.5th at p. 1075; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140.)

## DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

DATO, J.

GUERRERO, J.