Filed 4/30/25  P. v. Meyers CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KENNETH JOSEPH MEYERS,<br><br>    Defendant and Appellant. | A169852<br><br>(San Mateo County Super.<br>Ct. No. 23SF012674A) |

Kenneth Meyers was charged with and convicted of felony grand theft for taking a home theater receiver from a Best Buy store in July 2023. Surveillance footage from the day before showed that Meyers placed the receiver in his shopping cart, took it to an area partially hidden from surveillance coverage, found a microwave there, removed items from the box for the microwave, and then attempted to check out with the microwave box. Initially unsuccessful in making the purchase, Meyers returned the next morning and completed it.  Best Buy employees discovered the receiver was missing about a week afterwards.  Later, a store manager discovered a microwave with no security sensors in the open box area.  Meyers attempted to check out with a box for a fan on August 2, leading to his arrest.

Meyers now challenges his conviction and sentence on four grounds. First, he argues that the jury should have been instructed pursuant to *People v. Dewberry* (1959) 51 Cal.2d 548 to help it resolve any reasonable doubt as

between the charged grand theft and the lesser included offenses of attempted petty and grand theft. Next, he argues that the trial court should have instructed the jury that it could use the evidence of his uncharged conduct on August 2 and an incident in April 2016 for limited purposes only. Third, Meyers argues that the trial court relied on at least two improper factors at sentencing—its incorrect belief that Meyers rejected the Delancey Street residential substance abuse treatment program, and its lack of awareness that Meyers's 2011 felony conviction had been reduced to a misdemeanor. Finally, Meyers points out that the trial court erroneously imposed an administrative fee.

The Attorney General agrees that the administrative fee was invalid but disputes Meyers's other claims of error, and maintains that the claimed errors would be harmless in any event. We remand to the trial court to correct the probation report and strike the administrative fee, and otherwise affirm the judgment.

## BACKGROUND

### I. Factual History

A Best Buy manager, Michael Skinner, observed surveillance footage showing Meyers in the "open box" area of the store on July 20, 2023. "Open box" items are previous display items or items that have been returned and are being sold at a discount. Meyers was taking accessories and packing material for a $70 microwave in the open box area and putting them behind a different box.

Best Buy had an Arcam home theater receiver in the open box area that day; the receiver's normal retail value was $4,400, but it was discounted to $3,520.99. When the Arcam receiver was on display, it had no security tags attached. Surveillance footage showed the out-of-box Arcam receiver in

Meyers's shopping cart on July 20, underneath a box for a different, $300 receiver.

Another Best Buy manager, Scott Bolotaolo, was at the store on July 20. Later in the July 20 surveillance footage, near closing time, the boxes for the microwave and for the $300 receiver were in Meyers's shopping cart, but the Arcam receiver was not there. Meyers attempted to purchase the microwave box, but was not able to due to a problem with the credit card he was using. He returned the microwave box to a shelf in the open box area and placed another box on top of it.

On July 21, 2023, surveillance footage showed Meyers back at the Best Buy shortly after the store opened. He was in the open box area, with a shopping cart containing the box for the microwave. He succeeded in purchasing what appeared from the box to be a microwave. Skinner discovered the Arcam receiver was missing on July 29.

On August 2, Meyers returned to the Best Buy. In surveillance footage, he was holding a box for a fan. Then, in the open box area, Meyers put the fan that had been in the box behind other boxes. Meyers moved to an area with projectors and had a projector in his hand. Meyers attempted to check out with the fan box, but Bolotaolo asked him to leave and confiscated the box.

When Skinner returned on August 3, he watched the surveillance footage and saw that Meyers was the person he suspected was responsible for the theft on July 21. Skinner opened the fan box, which contained seven items, including the projector Meyers had been holding the day before. At least three of the items in the box typically would have security tags on them, but did not; no security tags were in the box. After searching the open box

3

area, Skinner found an open box microwave, along with detached security devices.

## II. Prior Offenses

In September 2011, Meyers was convicted of felony commercial burglary. The probation report described the facts of the crime: Meyers "entered a Home Depot store and removed two flashlights, a screwdriver and a package of files, with a total value of $105.43, off the shelf. [He] walked around the store, concealed the items in his jacket and then walked past the open check stands (without paying) towards an exit." When staff stopped him, Meyers resisted but was eventually arrested.

In April 2016, Meyers was detained for shoplifting at the same Best Buy store. The store's loss prevention officer found that Meyers had hidden two video cards in a box for a floor fan, purchased what appeared to be the fan in the box, and then was apprehended after Meyers set off the store's security sensor.

## III. Procedural History

For the July 2023 incident, Meyers was charged with felony grand theft, and with enhancements pursuant to Penal Code sections 1170.12, subdivision (c)(1) (one or more prior serious or violent felony); 1203, subdivision (e)(4) (multiple prior felonies); and 1170, subdivision (b)(2) (aggravating circumstances).[1] He was tried by jury.

After the close of evidence, the prosecutor argued to the jury that the facts of the August 2 incident were, as permitted by Evidence Code section 1101, subdivision (b), "offered for the limited purpose of absence of mistake, to show [Meyers's] intent on the day[s] of the incident, July 21st and July 20th, and the method or manner in which [Meyers] carries out his

---

[1] Undesignated statutory references are to the Penal Code.

thefts, his modus operandi, the manner or method of something being done by an individual." Later, in discussing the elements of the crime, the prosecutor again referenced section 1101, subdivision (b), noting that Meyers's conduct in April 2016 at the same Best Buy was relevant for the limited purpose of evaluating his intent.

Before reviewing the surveillance footage of the August 2 incident, the prosecutor reminded the jury that "[Evidence Code] section 1101 [subdivision] (b) [is] being used to show the absence of mistake, the intent, and the modus operandi, particular way or method of doing something," and that "the evidence that's being admitted for that purpose is the August 2nd incident, which we're now about to take a look at some of the relevant portions from" the surveillance footage. The prosecutor narrated portions of the footage, saying: "This is [Meyers's] method of doing things, his method of carrying out these thefts at this Best Buy." He then recalled both the August 2 and the April 2016 incidents, stating that the "evidence is being offered to prove the intent of the defendant on [July] 21st, the absence of mistake, and the method of which [Meyers] carries out his thefts: placing smaller but higher-valued items into a box and making the purchase." He directed the jury to "[l]ook at the evidence being submitted for the absence of mistake, the intent, the modus operandi, the method in which [Meyers] carries out the thefts at the same Best Buy."

Meyers's counsel primarily attacked the value of the receiver as being less than the $950 threshold distinguishing grand from petty theft. He then explained that attempted grand theft, like grand theft, would require that the value of the item be more than $950. Because the prosecution had not proven the receiver was worth more than $950, he asked the jury "to return not guilty verdicts on the charges of grand theft and attempted grand theft."

He did not argue that the theft was not completed, and did not otherwise discuss the attempted theft offenses.

On rebuttal, the prosecutor encouraged the jury to "[u]se the [Evidence Code section] 1101[subdivision] (b) evidence, the absence of mistake, the intent, the modus operandi evidence from the 2016 conviction for grand theft at this same Best Buy, and the incident that took place . . . on August 2."

The jury found Meyers guilty of grand theft less than an hour after starting deliberation. Meyers pled guilty to the charged enhancements.

## IV. Sentencing

Prior to sentencing, Meyers filed a sentencing brief and motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, asking the court to strike his 2004 felony conviction due to the age of the offense and his age at the time of the offense. The motion referenced his 2011 conviction for commercial burglary without noting that it had later been reduced to a misdemeanor, and discussed his history of childhood trauma and substance abuse, along with other mitigating factors. The brief cited Meyers's 2022 conviction, after which he "was recommended to outpatient treatment. Mr. Meyer's [sic] drug addiction and trauma prevented him from successfully completing the preliminary steps for outpatient [treatment]. After being arrested for this offense, Mr. Meyers' recognized that inpatient treatment is necessary and was accpeted [sic] into the Salvation Army . . . program. Mr. Meyer's [sic] hopes to handle his addiction the way he had been able to successfully handle it for periods in the past."

In conjunction with his brief, Meyers submitted a letter of acceptance to the Salvation Army residential treatment program. The letter described the program as beginning with a 30-day period in which Meyers would not have outside contact. The program would last at least six months, with

6

participants receiving individual and group counseling, alcohol and drug abuse education, and eight weeks of anger management. Participants could attend chapel, bible study classes, Alcoholics Anonymous and Narcotics Anonymous meetings, relapse prevention, and other groups. Meyers would be monitored by regular, random drug testing and would engage in work therapy.

Meyers also submitted an investigative report that documented his history of childhood trauma and substance abuse.

The probation report noted that Meyers "expressed a desire to enroll in a residential treatment program and has applied to the Salvation Army," along with other programs. "However," the report continued, "probation records indicate that [Meyers] was previously adamant that he was not interested in residential treatment. During the interview with this officer, [Meyers] stated that he was interested in residential treatment to assist him in changing his life but to also get him released from custody as soon as possible." Although Meyers "expressed a desire to address his substance abuse issues and make positive changes in his life, his sincerity is questionable as prior probation reports indicate that [he] was not interested in residential treatment programs and stated that he 'hates' them. Additionally, he reported that he would like to attend a residential treatment program to be released from custody as soon as possible. It appears [Meyers] is more interested in being release[d] from custody rather than addressing his substance abuse problem."

The report described Meyers's history of residential treatment, and stated that he reported interest in residential treatment "because he would like to change his life and be released from custody as soon as possible. However, a prior probation report . . . indicates that [Meyers] was adamant

7

that he did not want to participate in residential treatment. He stated that he 'hates' treatment programs and believes that drugs are readily available inside of programs. Additionally, he stated that he would rather serve his time in custody than attend residential treatment." The probation officer ultimately recommended that Meyers be sentenced to prison given his criminal history, his prior strike, and the fact that he was awaiting sentencing for another crime when arrested for this offense. The report listed Meyers's 2011 conviction as a felony.

The prosecution's sentencing memo also listed Meyers's 2011 conviction as a felony. The prosecution asked the court to deny probation and impose the maximum six-year term for the offense based on the prior strike allegation and aggravating factors.

Meyers first appeared for sentencing on January 17, 2024. Before continuing the hearing, the court said, "I don't intend this comment to mean any decision that this court has made. Obviously, there is some further information that [Meyers's counsel] is going to be providing, but . . . when you all come back, I would like to know . . . whether or not Mr. Meyers has inquired or applied for Delancey Street." Meyers's counsel asked, "That program specifically or – [?]" to which the court responded, "Yes." The parties returned for sentencing on February 5, but Meyers's counsel had not filed certain documents. The court explained its concern with the "discussion in the probation report in regards to treatment for Mr. Meyers. [¶] Candidly, the Court has questions as to whether or not Mr. Meyers is truly prepared to avail himself of serious residential treatment." Sentencing was continued again.

At the final sentencing hearing, Meyers's counsel explained, "we did examine the Delancey[2] House as a possibility. Unfortunately, there are a couple issues with Delancey House with Mr. Meyers' condition. First, Mr. Meyers has been prescribed Su[blo]cade, and Delancey House won't take individuals with Su[blo]cade. Secondly, the Delancey House uses a confrontation-style program, whereas a program like the Salvation Army is a Christian community-run program. Given the extensive trauma Mr. Meyers has experienced, a confrontation-style program is not appropriate for him. [¶] So Mr. Meyers has been accepted into the Salvation Army program. He's prepared to do that one. . . . [A] slightly more appropriate program for him would be the Health Right 360 program through Walden House. Unfortunately, he wasn't able to get accepted into that program until he's either released from custody . . . or if somehow probation were able to arrange his acceptance . . . . That is probably the most appropriate, but he's prepared to go through the Salvation Army program that could be extended to up to a year . . . ."

Meyers's counsel noted that all of Meyers's crimes were related to his drug use and that he "is committed [and] did attempt previously to treat his drug program [sic] after his last case. The method . . . where he was an outpatient wasn't adequate. Mr. Meyers recognizes he needs to be in a residential facility in order to deal with this issue, but he's committed to working on that and committed to solving it."

After further brief comment from the parties, the court stated: "So Mr. Meyers, it is unfortunate, quite frankly, that you have decided that

---

[2] The reporter's transcript refers to the "Delancy" program. We use the "Delancey" spelling instead. The transcript also refers to Meyers's medication as "Suvlicade." Meyers's briefing on appeal refers to "Sublocade," a spelling we adopt.

9

Delancey is not a place for you.  Your reasons . . . for not wanting to go to Delancey supports not only the court's concern about your seriousness about doing treatment, but also the probation officer who drafted this report, their hesitation in regards to your claims for wanting to receive treatment, and the probation officer's feeling that your assertions for wanting to do treatment now has more to do with your desire to be released from custody, as opposed to you truly wanting to address your drug addiction.

"[F]rom the court's perspective, Delancey Street is a very serious and successful program, which would require at least a two-year commitment." Meyers interjected, but the court continued, "I would agree with [Meyers's counsel], these are not violent crimes you're committing, but they continue to increase in number and nature.  And you were pending sentencing in a conviction on another case less than three months when you committed this one.  [¶]  Absent a serious program, this court does not believe that you are serious about addressing your drug problem."  Meyers interjected again, twice, the second time stating:  "Your Honor, I would love to go."

The court did not respond, but found Meyers ineligible for probation due to his 2004 prior strike.  The court noted his " childhood trauma suffered at the hands of his stepfather that the court must consider and will weigh." As to aggravating factors, Meyers's "prior convictions as an adult are numerous and of increasing seriousness.  [Meyers] has served several prior prison terms.  [Meyers] was on one grant of probation and awaiting sentencing on another conviction at the time of this offense.  The manner in which this crime was carried out indicates planning and sophistication. [Meyers] was knowingly in violation of his probation at the time of this offense."  As to mitigating circumstances, the court noted the multiple enhancements alleged, with "one enhancement based on the prior conviction

10

that is over five years old. Weighing both the mitigating and aggravating terms, the court finds the aggravating [factors] outweigh the mitigating circumstances, and therefore, finds the middle term of two years shall be imposed." The court doubled the term, for a sentence of four years, based on his prior strike pursuant to section 1170.12, subdivision (c)(1).

Further, the court found, "in light of the nature and circumstances of [Meyers's] present felony and his prior serious felony conviction, his poor performance on probation, the less than three months time lapse between his conviction and the trailing misdemeanor case for which he was pending sentencing and his renewed criminal activity in this case, [Meyers] does not appear to fall outside of the three strikes law spirit . . . , and therefore, the *Romero* [motion] is denied." The court ordered Meyers to pay fines, including, with respect to the restitution fine, a "10% administrative fee."

## DISCUSSION

### I. *Dewberry* Instruction

Meyers first argues that the trial court failed to instruct the jury how to apply the reasonable doubt standard as between the charged grand theft crime and the lesser included offenses of attempted grand theft and attempted petty theft. Under *Dewberry*, "[w]hen the evidence is sufficient to support a finding of guilt of both the offense charged and a lesser included offense, the jury must be instructed that if they entertain a reasonable doubt as to which offense has been committed, they must find the defendant guilty only of the lesser offense." (*People v. Crone* (1997) 54 Cal.App.4th 71, 75–76 (*Crone*).) Meyers argues that there was sufficient evidence to prove that he committed attempted theft of the Arcam receiver, rather than a completed theft, because there was no direct evidence that he placed the receiver in the microwave box, and then purchased and left the store with the receiver in the

11

box.  He contends that his trial counsel was ineffective for failing to request the *Dewberry* instruction.  The Attorney General acknowledges that the court did not instruct the jury on the attempt offenses pursuant to *Dewberry*, but argues that the remaining instructions adequately conveyed the *Dewberry* requirement and that the failure to instruct was harmless in any event.

We need not decide whether the given instructions were adequate. Even assuming that a *Dewberry* instruction was necessary to convey to the jury that it should resolve any reasonable doubt as between a completed and an attempted theft offense in favor of finding Meyers guilty of the lesser included attempted theft, and that the given instructions as a whole did not convey that requirement, Meyers has not shown that any error prejudiced him.  In evaluating prejudice, we ask whether it is reasonably probable that the result would have been more favorable to Meyers absent any error. (*Crone*, *supra*, 54 Cal.App.4th at p. 78.)  Although there was little direct evidence that Meyers succeeded in taking the Arcam receiver on July 21, and therefore that he completed the theft, the circumstantial evidence was strong and the jury did not seem to doubt his guilt.

Again, the evidence showed that on July 20, Meyers placed the receiver in his shopping cart and walked the cart to an area with limited surveillance coverage.  There, he removed at least some of the contents of a box that contained a microwave.  When Meyers emerged, the microwave box was in his cart, but the receiver was not.  He attempted to check out with the microwave box, but could not complete the purchase because of a problem with the credit card.  He left the store and returned the next morning, when he proceeded to the open box area, retrieved the microwave box, and purchased it.  Eight days later, the receiver was recorded as missing.  A few days after that, Skinner found a microwave out of its box in the area of the

store where the receiver was last seen. In sum, even though surveillance footage did not show Meyers in possession of the receiver when he left the Best Buy and it was not found in his possession thereafter, Meyers had the receiver in his shopping cart on July 20, after which it was not seen again in the store. Instead, store employees recovered an unboxed microwave like the one that should have been in the box that Meyers purchased on July 21. The evidence strongly supports the prosecution's theory that Meyers removed the microwave from its box and placed the receiver in the box while hidden from view of security cameras, and then purchased the concealed receiver in the microwave box.

Further, that Meyers returned on July 21 after having unsuccessfully attempted to purchase the box on July 20, and then completed a purchase on July 21 and did not return again until August 2—when he attempted to purchase different items—supports an inference that he accomplished his objective on July 21. The jury did not have questions during deliberations and returned a verdict quickly. Meyers's counsel focused his closing argument regarding the attempt offenses on the value of the receiver; he did not argue that the theft was incomplete. It is not reasonably likely, therefore, that the jury would have returned a more favorable verdict had the jury received a *Dewberry* instruction on the attempt offenses. (*Crone, supra*, 54 Cal.App.4th at pp. 78–79.)

## II.    Prior Conduct Evidence

Meyers next argues that the trial court had a sua sponte duty to instruct the jury that it could not use evidence of his conduct on August 2, 2023 and in April 2016 to infer that he had a bad character or was disposed to commit crime. Even if the court did not have such a duty, he argues, his trial counsel was ineffective for failing to request such an instruction and the

13

lack of instruction was prejudicial. The Attorney General counters that this is not the rare circumstance in which a court has a sua sponte duty to provide such an instruction; Meyers forfeited his request for an instruction; his trial counsel was not ineffective; and the lack of instruction was harmless.

We conclude that Meyers has not proven ineffective assistance of trial counsel. As to Meyers's other challenges, any error was harmless.

### A. Evidence Code Section 1101, Subdivision (b)

Evidence Code section 1101, subdivision (a) prohibits a court from admitting evidence of a person's character "to prove his or her conduct on a specified occasion." Subdivision (b) of this section, however, authorizes a court to admit "evidence that a person committed a crime . . . or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident[] . . .) other than his or her disposition to commit such an act." Here, the trial court admitted the evidence of Meyers's conduct in April 2016 and August 2023 at the same Best Buy to show his intent, plan, and modus operandi, and his lack of mistake in committing the July 2023 theft. On request, a trial court must instruct the jury on the limited use to which such evidence may be put. (Evid. Code § 355.) Here, the trial court offered no such specific instruction.

### B. Ineffective Assistance

Because the evidence of the April 2016 and August 2023 incidents was such a substantial portion of the trial, Meyers contends, trial counsel was ineffective for failing to request a limiting instruction. A defendant claiming ineffective assistance of counsel must show two things: (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) but for trial counsel's deficient performance, there is a reasonable probability

14

that the trial outcome would have been different.  (*In re Seumanu* (2024) 100 Cal.App.5th 599, 623–624.)  Meyers has failed to establish either prong.

As to the first, "[o]n direct appeal, if the record ' "sheds no light on why counsel acted or failed to act in the manner challenged," ' we must reject the claim of [ineffective assistance] ' "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation" ' " for the asserted error.  (*People v. Caro* (2019) 7 Cal.5th 463, 488.)  " '[E]xcept in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal.' " (*People v. Jasso* (Apr. 3, 2025, S179454) __ Cal.5th __, __ [2025 Cal.Lexis 1749, at p. *47].)

We perceive at least one possible tactical purpose for trial counsel's failure to request a limiting instruction:  to avoid calling further attention to and placing further emphasis on Meyers's prior conduct.  (*People v. Hinton* (2006) 37 Cal.4th 839, 878.)  Such a choice would have been particularly reasonable here because the prosecutor repeatedly and clearly asked the jury to apply the evidence only in a manner authorized by Evidence Code section 1101, subdivision (b).  Not asking the court to again reference the permissible use of the prior conduct evidence may have been the only way, in counsel's view, to limit the weight of that evidence in the jury's minds.  Because we can identify at least this one reasonable tactical purpose not to request further instruction, Meyers's claim of ineffective assistance fails.

### C.    Prejudice

Meyers's further arguments regarding the Evidence Code section 1101, subdivision (b) evidence fail because he has not established that the lack of instruction was prejudicial.  We note, primarily, the prosecutor's multiple

15

statements to the jury, made each time the prosecutor referenced the prior conduct, as to the way in which the evidence of that conduct could properly be used. Meyers's April 2016 and August 2023 conduct was also so similar to that of the July 2023 offense that it was far more probative of Meyers's modus operandi in committing thefts at this Best Buy store than it was to any generalized notion that he had a bad character or was disposed to commit crime. It is true that a court's instructions are deemed to carry more weight than statements by a prosecutor in closing argument. (*People v. Centeno* (2014) 60 Cal.4th 659, 676.) In this case, however, the prosecutor so consistently explained the legitimate use of the evidence to the jury that a more specific instruction from the court would likely have carried little additional weight and risked undue repetition. The trial court's more general admonition that certain evidence was admitted for a limited purpose only was sufficient to reinforce the prosecutor's consistent comments.

## III. Sentencing

Meyers contends that the trial court relied on false information and improper factors at sentencing because it considered his 2011 conviction for commercial burglary as a felony, rather than as a misdemeanor, and because it erroneously believed that Meyers refused the Delancey Street program, that he was not serious about residential substance abuse treatment, and that the Salvation Army program to which he had been accepted was not a serious program. We review the trial court's sentencing decisions for an abuse of discretion. (*People v. Frederickson* (2023) 90 Cal.App.5th 984, 988.) A defendant challenging their sentence must show that the trial court's decisions were arbitrary or capricious, including potentially because the trial court relied on material misinformation. (*Ibid.*)

16

## A.    Request for Judicial Notice

Meyers first asks us to take notice of the records of the trial court, showing that his felony conviction in San Mateo County Superior Court case number SC073086A was reduced to a misdemeanor in November 2014 pursuant to section 1170.18.  He cites Evidence Code sections 452 and 459 as authorizing us to take notice of judicial records.  He notes that California Rules of Court, rule 8.252(a)(2)(C) requires, "[i]f judicial notice of the matter was not taken by the trial court, [a statement] why the matter is subject to judicial notice under Evidence Code section 451, 452, or 453."  He also cites *People v. Mendoza* (2015) 241 Cal.App.4th 764, 773, fn. 1 and *Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 872, fn. 3 in support of his request.

The Attorney General opposes Meyers's request for judicial notice, arguing that the status of Meyers's 2011 conviction was not before the trial court, Meyers forfeited his request to correct the court's records by failing to raise it below, and it is not material here whether his conviction was a felony or misdemeanor.

Evidence Code section 452, subdivision (d) expressly authorizes this court to exercise its discretion to take notice of the records of courts of this state.  Because there is no actual dispute that the trial court was erroneously informed that Meyers's 2011 conviction was a felony and the status of his 2011 conviction is relevant to our evaluation of the trial court's determination at sentencing, we will exercise our discretion to take notice that Meyers's 2011 conviction is deemed a misdemeanor for all purposes.  (§ 1170.18, subd. (j); *People v. Buycks* (2018) 5 Cal.5th 857, 870–871.)

## B.    Application of Sentencing Factors

Meyers argues that the trial court prejudicially erred by relying on false information and improper factors at sentencing.  First, he points to the

inaccuracy in his criminal history regarding his 2011 conviction. Second, he claims the trial court misunderstood his commitment to engage in residential substance abuse treatment and improperly rejected the Salvation Army program that he proposed. While the trial court did not acknowledge that Meyers's use of Sublocade made him ineligible for Delancey Street, we are unable to conclude that it abused its discretion in declining to sentence him to probation and residential treatment, instead imposing a four-year sentence based on statutory presumptions, Meyers's extensive criminal history, and other aggravating factors.

Preliminarily, the parties disagree as to the application of the abuse of discretion standard to the issues on appeal. Meyers argues that the trial court's reliance on improper sentencing factors is a legal error subject to de novo review, and not, as the Attorney General contends, a disagreement as to the court's factual findings, subject to more deferential review. Although the parties' arguments assume that the abuse of discretion standard is unitary, it is not. A court abuses its discretion if it applies the wrong legal standard, a question we review de novo, and if its factual determinations are not sufficiently supported, a question we review for substantial evidence. (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 135.) If a court fails in either regard, it is said to have acted arbitrarily or capriciously. (*Ibid.*) Meyers has not established either that the trial court legally erred by applying improper sentencing factors, or that its rulings are not supported by substantial evidence.

In considering whether the trial court erred as a matter of law, we note that the court concluded, based on Meyers's 2004 felony conviction, that probation—and therefore residential treatment—was not available to him absent a reason to make an exception under *Romero* and strike his 2004

18

felony strike conviction. (See § 1170.12, subd. (a)(2) [prohibiting grant of probation for second- or third-strike offenders].) Although the court seemed to misunderstand, in part, Meyers's explanation that he was ineligible for the Delancey Street program, the court still had the legal authority to conclude that striking his 2004 conviction was not "in furtherance of justice" (§ 1385, subd. (a)) unless the treatment program to which he was sentenced as an alternative to incarceration was comparable to the Delancey Street program. The trial court did not specify the reasons it believed the Salvation Army program was less serious than the Delancey Street program, but because this issue is a factual one, we must review it for substantial evidence and, absent indication to the contrary, infer that the court had a reasonable basis to so conclude. (*People v. Kelly* (2018) 28 Cal.App.5th 886, 904 ["When there is no 'explicit ruling by the trial court at sentencing, we infer that the court made the finding appropriate to the sentence it imposed' "].) The record reveals that the Delancey Street program would last two years, twice that of the maximum duration of the Salvation Army program. Delancey Street also would not enroll an individual who was using Sublocade to treat their addiction, while the Salvation Army would, implying that Delancey Street's eligibility requirements were more rigorous than the Salvation Army's. Those factual determinations constitute substantial evidence that supports the trial court's ruling that only an intensive residential program would further the interests of justice by effectively treating Meyers's longstanding substance abuse problem and related criminal tendencies.

Meyers cites *Wade v. Superior Court* (2019) 33 Cal.App.5th 694 (*Wade*), *People v. Eckley* (2004) 123 Cal.App.4th 1072 (*Eckley*), *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706 (*J.N.*), and *People v. Nakano* (2023) 89 Cal.App.5th 623 (*Nakano*), among others, as cases in which trial court rulings were

19

reversed because the courts failed to consider appropriate statutory factors, misapplied those factors, and/or relied on false or inaccurate information in support of their rulings  He argues that these cases establish that the trial court erred as a matter of law, but the courts' errors in these cases were much more substantial than the asserted errors here, and the cases do not involve the statutory considerations at issue in Meyers's sentencing.  They do not, therefore, demonstrate that the trial court legally erred by misapplying statutory sentencing factors or that its factual determinations were so egregiously erroneous that they constitute legal error.

In *Wade*, the trial court did not apply specified statutory factors meant to divert members of the military charged with low-level offenses from trial and incarceration in favor of rehabilitation.  (*Wade*, *supra*, 33 Cal.App.5th at p. 712.)  The prosecution falsely stated in its papers that the defendant had caused a collision and fled the scene of an accident.  (*Id.* at p. 717.)  In fact, police officers observed the defendant slowly weaving in and out of lanes on the highway and signaled him to pull over.  (*Id.* at p. 701.)  He pulled to the side of the road, albeit in an unsafe location, and was arrested for driving under the influence without any collision or flight.  (*Id.* at pp. 702, 704, 717.)  Here, in contrast to *Wade*, no statutory purpose in favor of pretrial diversion is at play.  In fact, the court in *Wade* specifically distinguished the statutory factors applicable to felony sentencing—and therefore to Meyers—insofar as they are animated by different purposes than the military pretrial diversion statute.  (*Id.* at pp. 714–715.)  And unlike in *Wade*, the statutory presumption applicable to Meyers is to *deny* probation rather than to promote rehabilitation by diverting military offenders from a criminal trial.  Moreover, the false information here was incorrect only as to the degree of

one of Meyers's convictions out of approximately two dozen, not as to significant portions of the facts underlying the criminal charges.

In *Eckley*, the probation report was prepared before the probation officer had access to the trial transcripts, so the report's narrative description of the defendant's crimes was not supported in material respects by the trial evidence, and even was contradicted in part, as were statements in three other sentencing documents. (*Eckley*, *supra*, 123 Cal.App.4th at pp. 1078–1080.) The prosecution in *Eckley* "all but conceded" that the inaccuracies were material and that the court's reliance on them violated due process. (*Id.* at p. 1081.) The significant sentencing errors in *Eckley* are not sufficiently similar to the errors Meyers points to here to establish error as a matter of law.

Neither *J.N.* nor *Nakano* are sentencing cases, and neither establishes that the trial court's rulings here were legal error. In *J.N.*, the trial court improperly applied two of five statutory factors that the prosecution had to prove to permit a juvenile over the age of 16 to be subject to adult criminal proceedings, and the factual errors in the juvenile suitability report were far more extensive than the single, minor error in the probation report here. (*J.N.*, *supra*, 23 Cal.App.5th at pp. 711, 716, 721–724.) In *Nakano*, the trial court abused its discretion by relying on two factors, neither of which was related to the statutory factors that limited the court's discretion to terminate probation. (*Nakano, supra*, 89 Cal.App.5th at pp. 635–636.) Neither case establishes that the trial court's decision not to strike Meyers's prior strike was legal error. Nor has Meyers shown that the trial court's underlying factual findings lack substantial evidentiary support.

## C.    Prejudice

Meyers similarly has not shown that the errors prejudiced him.  As previously noted, the error in the probation report concerned the degree of one criminal conviction out of two dozen.  Although without the error Meyers's criminal history would have shown a period of approximately 12 years in which he was not convicted of a felony, during that period he was still regularly committing misdemeanor nonviolent crimes, all of which were connected to his substance abuse and similar in nature to the facts underlying his 2011 burglary conviction that was later reduced from a felony to a misdemeanor.  It was also not the case that he had no felony convictions after the 2004 prior strike conviction and before the offense here:  He was convicted in 2017 of felony grand theft.[3]  In this context, the error in Meyers's criminal history was too minor to have more than a negligible impact at sentencing.

As to the court's consideration of granting Meyers probation to allow him to seek residential treatment, its discretion was limited by section 1203, subdivision (e)(4), in addition to *Romero* and section 1170.12, subdivision (a)(2).  Section 1203, subdivision (e)(4) states that a court "shall not" grant probation to individuals, like Meyers, who have been convicted of at least two felonies, "[e]xcept in unusual cases in which the interests of justice would be best served" by the grant of probation.  (§ 1203, subd. (e)(4).)  This statutory presumption—in addition to that of section 1170.12, subdivision (a)(2)— weighed against the grant of probation.

Even if the trial court fully considered the reasons Meyers was not eligible for the Delancey Street program, the court was still indisputably

---

[3] Because Meyers cannot show prejudice from the criminal history error, he cannot establish ineffective assistance on that basis.

inclined not to grant probation and allow Meyers to receive treatment in lieu of incarceration unless he did so in a program that was at least as structured and intensive as the trial court believed Delancey Street is. Meyers had already unsuccessfully participated in outpatient and residential treatment. It was not an abuse of discretion for the trial court to believe that anything less than the Delancey Street program was not sufficiently "serious" to serve a rehabilitative purpose given Meyers's extensive history of drug-related offenses and failed treatment programs.

The probation officer's evaluation of Meyers's commitment to treatment supported the trial court's assessment. The probation report showed that Meyers had been granted probation for more than half of his adult convictions, and that for many of those, probation was revoked and/or he completed probation unsuccessfully. Given these multiple reasons to believe Meyers would not succeed on probation or in residential treatment, along with the statutory presumptions weighing against the grant of probation, it was not reasonably likely that the trial court would have ordered Meyers to participate in the Salvation Army program in lieu of the Delancey Street program, even if it fully understood Meyers's explanation for not being eligible for the latter program.

### D.    Probation Report Error

Meyers argues that the probation report should be corrected to reflect that his 2011 conviction for felony commercial burglary was reduced to a misdemeanor. Although the Attorney General urges us to treat the issue as forfeited, we conclude that, in the interest of ensuring complete and accurate judicial recordkeeping, the probation report should be corrected. The probation report here references information in earlier probation reports and

gathered from probation records, further indicating that it is necessary to correct an error in the record and to prevent possible future errors.

## IV.    Administrative Fee

The parties agree that the 10 percent administrative fee applied to the restitution fine is unlawful following amendments to section 1202.4, former subdivision (l), which previously allowed the imposition of such a fee, but was eliminated effective January 1, 2022.  (Stats. 2021, ch. 257, § 19.)  The fee does not appear in the abstract of judgment, in the court's minutes from the sentencing hearing, or in the probation report, but it was part of the trial court's oral pronouncement of sentence.  The administrative fee was unlawful and must, accordingly, be stricken from the judgment.

## DISPOSITION

The matter is remanded to the trial court to order correction of the probation report to reflect that Meyers's 2011 commercial burglary conviction is a misdemeanor for all purposes, and to strike from the judgment the 10 percent administrative fee imposed in conjunction with the restitution fine. In all other respects, the judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.

24