Filed 4/22/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AIMEE BOBO,<br><br>Petitioner,<br><br>v.<br><br>APPELLATE DIVISION OF THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>Respondent;<br><br>THE PEOPLE,<br><br>Real Party in Interest. | D087393<br><br><br><br>(San Diego County<br>Super. Ct. No. M298511;<br>Appellate Division No.<br>25MW000137C) |

ORIGINAL PROCEEDING in mandate challenging a judgment of the Appellate Division of Superior Court of San Diego County, Presiding Judge Albert T. Harutunian III and Judges Frank L. Birchak and Maryann D'Addezio. Petition granted.

Jo E. Super, Chief Deputy Public Defender and Ryan M. Ahern, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Heather Ferbert, City Attorney, Paige E. Folkman and Karen S. Li, Assistant City Attorneys, and Michael E. Cosgrove, Deputy City Attorney, for Real Party in Interest.

Aimee Bobo was charged with misdemeanor vehicular manslaughter (Pen. Code,[1] § 192, subd. (c)(2)) after running a red light, colliding with another vehicle, and killing the other driver, Mary Donato. Before trial, she requested misdemeanor diversion under section 1001.95. The trial court found Bobo eligible for misdemeanor diversion but not suitable on the ground that her negligent conduct caused the death of another person. Bobo filed a petition for writ of mandate in the appellate division of superior court. The appellate division summarily denied the petition. She then filed another petition for writ of mandate in this court challenging the appellate division's ruling. After requesting an informal response from the People, we issued an order to show cause.

We now conclude Bobo is entitled to relief. A defendant charged with misdemeanor vehicular manslaughter is eligible for misdemeanor diversion because it is not one of the excluded offenses specifically listed in the statute. (§ 1001.95, subd. (e).) This offense necessarily requires criminally negligent conduct resulting in the death of another person. By relying solely on facts inherent in the qualifying offense and failing to connect them to the underlying purposes of the misdemeanor diversion statute, the trial court abused its discretion in deciding Bobo was not suitable for diversion. On this record, Bobo has also demonstrated the absence of an adequate legal remedy and irreparable harm if relief were denied. We will therefore issue a writ of mandate directing the appellate division to vacate its order summarily denying Bobo's petition for writ of mandate and issue a new order (1) issuing

---

[1] All further undesignated statutory references are to the Penal Code.

2

a peremptory writ in the first instance, and (2) directing the superior court to vacate its order denying misdemeanor diversion and reconsider Bobo's suitability in conformity with the views expressed in this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

We take the facts from the allegations of the petition and return and the exhibits attached to both. These facts are essentially undisputed because neither party has contested the factual allegations of the other.

On the evening of November 11, 2024, Bobo was driving a Ford F-450 truck southbound on Kearny Villa Road approaching the signal-controlled intersection with an off-ramp from Route 163. A few seconds after Bobo's light turned red, she went through the intersection. Bobo's vehicle struck the driver's side of a Toyota Highlander that was turning left on a green light from the off-ramp onto northbound Kearny Villa Road. The speed limit on Kearny Villa Road at the intersection was 50 miles per hour. Bobo and other witnesses later estimated she was going 55 to 60 miles per hour, but one witness estimated she was traveling up to 80 miles per hour. The impact from the collision killed Donato, the driver of the Toyota. Bobo's truck struck a light pole and stopped.

Bobo appeared to be in shock at the scene. She told law enforcement she thought she had the green light but seemed unsure. Police saw no signs of intoxication. Bobo was 50 years old and had never been arrested or charged with a criminal offense.

Bobo was charged with misdemeanor vehicular manslaughter. (Pen. Code, § 192, subd. (c)(2).) She was arraigned in May 2025 and released on her own recognizance with an order not to drive.

Before trial, Bobo filed an "invitation" for the court to grant misdemeanor diversion under section 1001.95, with multiple supporting

3

character references and attached family photos.  She argued she was eligible for diversion because the charged crime was not one of the specifically excluded offenses.  Her diversion request provided a lengthy background of her upbringing as an adopted child in San Diego, education, employment history, community ties, relationship with her adoptive parents, history as a single mother, relationship with her daughter and grandson, and service as a caretaker for 19 years after her mother was diagnosed with cancer.

The supporting character references described Bobo as a kind, caring, selfless, honest, generous, reliable, and compassionate person.  One long-time friend reported that after the accident, Bobo called her "devastated and sobbing that she couldn't live with herself."  According to the friend, the accident "weighed heavily" on Bobo, she sought counseling, and she "has never stopped grieving that moment."  Another friend similarly reported that the accident "ha[d] deeply affected [Bobo], as she is someone who would never intentionally hurt anyone."

Bobo requested diversion for a period of 18 months on the following conditions: (1) she complete an in-person traffic course; (2) she complete 150 hours of volunteer service; (3) she write a letter to the victim's family; (4) payment of restitution be reserved; (5) she remain law-abiding and "not pick up any new criminal cases"; and (6) any other terms the court deemed appropriate.

The People opposed the diversion request.  They asserted the "circumstances of this offense as well as Mrs. Donato's family's strong opposition to diversion" supported denial.  The People argued the court should weigh the "societal interests in prosecuting this conduct, protection of the public, and the wishes of Mrs. Donato's family."  The People asserted: "While no outcome in this case would truly be fair to them, the most just

4

outcome would be for the family to hear [Bobo] say the most powerful words family could hear in a case like this: guilty.  To grant diversion would be to take that necessary closure away from the family. . . .  [¶]  Diversion does not adequately address [Bobo]'s conduct and the loss of life in this case.  [Bobo]'s conduct demands accountability by way of a conviction."

The People submitted letters from two of Donato's family members describing the devastating impact of her death, opposing Bobo's request for diversion, and expressing the view that Bobo should not be able to get away with only community service.  The letters described Donato as a 66-year-old grandmother and mother of two adult children, including a son with autism who experienced deep confusion and pain from her death.  Donato immigrated from the Philippines and was the anchor of her family.  She and her husband lived frugally, but she supported extended family members financially and emotionally, including putting some through college.  She was active in her local church and community, compassionate, and generous to others.  She was deeply loved and her family suffered tremendously from her death.

The court held a hearing on the request for diversion.  After an unreported discussion in chambers, the court ruled that Bobo "was not suitable for diversion, although she is eligible[,] given the severe consequences that resulted from her decision to . . . run a red light, which resulted in Ms. Donato['s] death."  However, the court modified the driving restriction to permit Bobo to drive for employment purposes and to attend medical appointments and religious services.[2]

The defense requested reconsideration of the court's ruling.  At another hearing on this request, the prosecutor acknowledged that Bobo "is

_____

2      For the two hearings at issue, Bobo has submitted transcripts with

dependable at work," "has good standing in the community," "helps provide for her family," has "upstanding character," and "goes above and beyond [for] her family." But the prosecutor argued: "It is still true that . . . she ran a red light in a . . . truck, and because she did that, crashed into the victim Mary Donato, and killed her. . . . If diversion is granted in this case, it takes away from the most powerful words a family of a victim in these situations could hear, and that's the words guilty. And that is why it is not in the interest of justice to grant diversion in this case."

The court denied the request for reconsideration as follows: "We all recognize that it seems uncontroverted, that Ms. Bobo has overcome a number of . . . very difficult challenges in her life. She's shown her resilience, she's shown her concern and care for other people, which are all very commendable attributes. . . . Ms. Bobo has a very wide group of supporters, community supporters, people who are grateful to her, people who admire her, and have only good things to say about Ms. Bobo, and the court certainly takes that into consideration. [¶] However, because of the alleged negligence of Ms. Bobo . . . , in November of 2024, another member of our community, a beloved family member, lost her life . . . . [T]he court must consider the consequences of Ms. Bobo's actions, and as I found when I first considered Ms. Bobo's invitation to make a judicial diversion, the court again finds that

---

declarations stating that they are true and correct transcriptions of the court proceedings. Her petition and the minute orders indicate the proceedings were recorded electronically. The People have not objected to the transcripts. In the absence of any objection, we will consider these declarations and transcripts under rule 8.486(b)(3)(A) of the California Rules of Court. (See also Cal. Rules of Court, rules 8.864(a)(1) [permitting transcript of official electronic recording in misdemeanor appeals]; 8.868(b) [governing transcripts from official electronic recordings]; 8.931(b)(1)(D) & 8.932(a) [permitting transcript of electronic recording for misdemeanor writs in appellate division].)

Ms. Bobo is not suitable for judicial diversion given the severe consequences of her actions, the . . . loss of human life. . . . Ms. Bobo is charged with vehicular manslaughter, which is [a] charge of negligence. I understand that, and it's charged as a misdemeanor, but the court also must consider that Ms. Donato is no longer walking the face of the Earth with us because, and solely because, of Ms. Bobo's actions. So for those reasons, the court must again [decline] the [invitation] to admittance over to judicial diversion."

Bobo filed a petition for writ of mandate in the appellate division of superior court challenging the court's denial of misdemeanor diversion. The appellate division summarily denied the petition as follows: "A sufficient basis for a writ of mandate, which is discretionary, has not been shown and is therefore DENIED."

Bobo then filed another petition for writ of mandate in this court challenging the appellate division's denial of writ relief. The petition requests that we direct the appellate division to vacate its summary denial and issue a peremptory writ of mandate ordering the superior court to either place Bobo on diversion or reconsider whether she is a suitable candidate for diversion. After requesting and receiving an informal response from the People, we issued an order to show cause.

DISCUSSION

I

*Standard of Review*

Bobo's petition for writ of mandate in this court challenges the appellate division's denial of her petition for writ of mandate below. The appellate division's denial of writ relief is not appealable but is subject to discretionary review by way of a petition for writ of mandate in this court. (Code Civ. Proc., § 904.3 ["An appeal shall not be taken from a judgment of

7

the appellate division of a superior court granting or denying a petition for issuance of a writ of mandamus or prohibition directed to the superior court, or a judge thereof, in a limited civil case or a misdemeanor or infraction case. An appellate court may, in its discretion, upon petition for extraordinary writ, review the judgment."].)

We review the appellate division's denial of writ relief for abuse of discretion. (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 246; *Dews v. Superior Court* (2014) 223 Cal.App.4th 660, 664, 669.) However, we independently review its rulings on issues of law. (See, e.g., *Tan v. Appellate Division of Superior Court* (2022) 76 Cal.App.5th 130, 136 [statutory interpretation]; *Wolf v. Appellate Division of Superior Court* (2019) 38 Cal.App.5th 699, 702 [right to appointment of counsel based on undisputed facts].)

"The appellate division of the superior court has original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition directed to the superior court in causes subject to its appellate jurisdiction." (Cal. Const., art. 6, § 10.) The causes subject to its appellate jurisdiction are misdemeanors, infractions, and limited civil cases. (Pen. Code, § 1466; Code Civ. Proc., § 904.2.) In these categories of cases, the appellate division has jurisdiction to issue a writ of mandate directed to the superior court as an "inferior tribunal." (Code Civ. Proc., § 1085, subd. (b).)

A writ of mandate must be issued to correct a lower court's error when "there is not a plain, speedy, and adequate remedy, in the ordinary course of law" (Code Civ. Proc., § 1086) and the petitioner will suffer irreparable injury if relief is not granted. (*Los Angeles Gay & Lesbian Center v. Superior Court* (2011) 194 Cal.App.4th 288, 299–300.) These requirements are interrelated because irreparable injury in this context refers to harm or prejudice "that

8

cannot be corrected on appeal" from the final judgment. (*Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1274.) If the error and resulting injury can be corrected on appeal from the final judgment, this is usually an adequate remedy. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 912–913.) But "various factors, such as expense of proceeding with a trial and prejudice resulting from delay, may operate to make that remedy inadequate." (*Phelan v. Superior Court of San Francisco* (1950) 35 Cal.2d 363, 370.)

"Although appellate review by extraordinary writ petition is said to be discretionary, a court must exercise its discretion 'within reasonable bounds and for a proper reason.' " (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113.) "The discretionary aspect of writ review comes into play primarily when the petitioner has another remedy by appeal and the issue is whether the alternative remedy is adequate." (*Ibid.*) "But if the court finds no other plain, speedy, and adequate remedy in the ordinary course of law, the court 'must' issue the writ." (*Eshagian v. Cepeda* (2025) 112 Cal.App.5th 433, 453 (*Eshagian*).)

In a petition for writ of mandate filed in the Court of Appeal under Code of Civil Procedure section 904.3 challenging the appellate division's denial of a petition for writ of mandate, the petition and any relief granted by the Court of Appeal should be directed to the appellate division rather than the trial court. (*Kuhnel v. Appellate Division of the Superior Court of Contra Costa County* (2025) 117 Cal.App.5th 174, 179, fn. 2 & 184.)

II

*The Trial Court Abused its Discretion in Denying Misdemeanor Diversion*

Bobo argues the trial court abused its discretion by denying misdemeanor diversion under section 1001.95. If we were to conclude that

9

the trial court's ruling was not an abuse of discretion, it would necessarily follow that the appellate division's summary denial of writ relief would not be either. A reviewing court does not abuse its discretion by denying extraordinary relief when no error was committed by the lower court. We therefore begin by considering whether the trial court abused its discretion by declining Bobo's invitation to grant misdemeanor diversion.

A.     *Statutory Background*

Effective January 1, 2021, the Legislature enacted a new form of misdemeanor pretrial diversion by adding sections 1001.95 to 1001.97 to the Penal Code. Section 1001.95, subdivision (a) provides: "A judge in the superior court in which a misdemeanor is being prosecuted may, at the judge's discretion, and over the objection of a prosecuting attorney, offer diversion to a defendant pursuant to these provisions." Subdivision (b) states: "A judge may continue a diverted case for a period not to exceed 24 months and order the defendant to comply with terms, conditions, or programs that the judge deems appropriate based on the defendant's specific situation."

The statute specifies several charged offenses that are categorically excluded from the diversion program: registrable sex offenses (Pen. Code, § 290), certain domestic violence offenses (Pen. Code, § 13700; Fam. Code, § 6211) and stalking (Pen. Code, § 646.9). (Pen. Code, § 1001.95, subd. (e).) Misdemeanor vehicular manslaughter (Pen. Code, § 192, subd. (c)(2)) is not one of the excluded offenses.

A defendant who is diverted under this program must complete all conditions ordered by the court, make full restitution unless indigent, and comply with any protective order, stay-away order, or order prohibiting firearm possession. (§ 1001.96.) "If the defendant has complied with the

10

imposed terms and conditions, at the end of the period of diversion, the judge shall dismiss the action against the defendant." (§ 1001.95, subd. (c).) If the defendant does not comply, the court may "end the diversion and order resumption of the criminal proceedings." (*Id.*, subd. (d).)

"Upon successful completion of the terms, conditions, or programs ordered by the court pursuant to Section 1001.95, the arrest upon which diversion was imposed shall be deemed to have never occurred. The defendant may indicate in response to any question concerning their prior criminal record that they were not arrested. A record pertaining to an arrest for successful completion of the terms, conditions, or programs ordered by the court shall not, without the defendant's consent, be used in any way that could result in a denial of any employment, benefit, license, or certificate." (§ 1001.97, subd. (a).) However, an exception to this provision requires disclosure of the arrest in response to a direct question in an application for a position as a peace officer. (*Id.*, subd. (b).)

"The Legislature's purpose in enacting section 1001.95 was to treat, restore, and rehabilitate. A Senate Floor Analysis makes this point. 'Diversion programs that are successfully completed allow a person to avoid the lifelong collateral consequences associated with a criminal record when they are seeking employment or housing. Diversion programs typically require individuals to fulfill strict requirements, including participating in a rehabilitation program. This proactive approach has shown to yield better recidivism rates than merely prosecuting and jailing an individual.' " (*Grassi v. Superior Court* (2021) 73 Cal.App.5th 283, 292, fn. 4 (*Grassi*) [quoting Sen. Rules Com., Off. of Sen. Floor Analysis, 3d reading analysis of Assem. Bill No. 3234 (2019–2020 Reg. Sess.) as amended Aug. 24, 2020, p. 2 (Sen. floor analysis)].)

11

The Assembly third reading analysis of the bill quoted a proponent's argument in favor as follows: " 'Incarceration and prosecution are intensely traumatic and damaging processes that harm individuals, families and communities, and often increase recidivism and exacerbate the underlying causes of crime. Judge-granted diversion is a tool that can reduce the direct and collateral consequences of mass incarceration and prosecution and promote racial justice in our criminal legal system. AB 3234 also decreases the taxpayer cost of traditional criminal case proceedings, while increasing accountability through rigorous rehabilitative programming, encouraging familial relationships and growth by avoiding familial separation that occurs with incarceration, and making us all safer by reducing recidivism.' " (Assem. 3d reading analysis of Assem. Bill No. 3234 (2019–2020 Reg. Sess.) as amended Aug. 3, 2020, p. 4 (Assem. 3d reading analysis).)

Before this new law went into effect in 2021, misdemeanor diversion could only be granted with the approval of the prosecution. (§ 1001.2, subd. (b).) The Legislature intended to eliminate this approval requirement. As explained in the Assembly third reading analysis: "This bill would create a court-initiated misdemeanor diversion program. A superior court judge would be authorized to divert a misdemeanor defendant over the objection of the prosecution. . . . Whether or not to divert a misdemeanor defendant would be in the trial court's discretion. However, judicial discretion is not without limits. '[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' " (Assem. 3d reading analysis, *supra*, at p. 3.)

B.  *Standard of Review for Denial of Misdemeanor Diversion*

A trial court's denial of pretrial diversion is reviewed for abuse of discretion. (*Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 708 (*Wade*).)

12

"It is commonly said that a trial court abuses its discretion when it ' "exceeds the bounds of reason, all of the circumstances before it being considered" ' [citation] or its decision is 'so irrational or arbitrary that no reasonable person could agree with it.' [Citation.] But judicial discretion must also be ' "guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' " (*Id.* at pp. 708–709.) "Where the source of discretion is statutory, we measure the trial court's exercise of judicial discretion 'against the general rules of law and . . . against the specific law that grants the discretion.' " (*Id.* at p. 709.)

In determining suitability for pretrial diversion, the trial court's exercise of discretion "must be informed by the legal principles and purpose of the statute guiding the court's actions." (*Wade, supra*, 33 Cal.App.5th at p. 710.) Even when the diversion statute contains no specific criteria for determining suitability, this "does not alter the fundamental duty to exercise discretion consistent with the principles and purpose of the governing law." (*Ibid.*) The court's discretion must be guided by "the underlying purposes" of the statute and "an understanding of the findings that prompted the Legislature to create the diversion program." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 895–896 (*Sarmiento*); see also *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 886–892 (*Qualkinbush*) [trial court abused its discretion by relying on general sentencing objectives and failing to consider primary purposes of diversion statute in denying motion for diversion].)

C.    *Analysis of Trial Court's Denial of Misdemeanor Diversion*

Bobo argues that the trial court abused its discretion by relying solely on the circumstances of the offense to deny diversion, rather than analyzing

13

her suitability for treatment and rehabilitation. She contends the trial court's ruling was antithetical to the Legislature's purpose in making misdemeanor vehicular manslaughter a qualifying offense for misdemeanor diversion. We agree the trial court abused its discretion by relying solely on facts inherent in Bobo's commission of the charged offense without connecting them to the underlying principles and purpose of the misdemeanor diversion statute.

In *Wade*, the court decided a similar issue under a pretrial diversion statute for military defendants (§ 1001.80). The trial court there denied a pretrial diversion request made by a military defendant with no criminal record who was charged with misdemeanor driving under the influence (DUI). The trial court explained its ruling as follows: " '[L]ook[ing] at the nature of the charge, . . . driving under the influence while impaired is an inherently dangerous type of offense, especially when we're talking about blood alcohols that are double the legal limit. . . . [T]his was a .16. The driving was bad driving in this particular case . . . . Also the fact that the defendant was not a passive participant . . . . He decided to drink alcohol and decided to drive a motor vehicle. So that being said, in this particular case, the Court believes that public safety would dictate that this particular case not come within [section] 1001.8[0], respectfully.' " (*Wade, supra*, 33 Cal.App.5th at p. 704, footnote omitted.)

In granting writ relief, the Court of Appeal found that the trial court's denial of diversion based primarily on the nature of the charged offense conflicted with the Legislature's express intent to include DUI offenses within the scope of the diversion statute. (*Wade, supra*, 33 Cal.App.5th at pp. 714–718.) "Simply put, the trial court in this case did not have discretion to deny Wade's request based on the inherently dangerous nature of driving

14

while intoxicated, because the Legislature implicitly considered the commonly occurring features of DUI offenses but nevertheless elected to include them in the statutory program without restriction." (*Id*. at p. 717.) "[T]he court's discretionary determinations about who is suitable to participate in pretrial diversion and how to evaluate suitability may not ignore or contravene the legislative intent to include misdemeanor driving under the influence offenses within the scope of section 1001.80. Because the determination that Wade's case did 'not come within [section] 1001.8[0]' was antithetical to the Legislature's purposeful inclusion of DUI offenses in the statute, we conclude that the trial court abused its discretion in denying Wade's diversion request on that basis." (*Id*. at p. 718.)

Another court reached a similar conclusion in *People v. K.D.* (2025) 110 Cal.App.5th 1 (*K.D.*). The defendant in *K.D.* was charged with kidnapping a 17-month-old child, child abduction, and vehicle theft. (*Id*. at pp. 8–9, 20.) The trial court denied her pretrial request for developmental disability diversion under section 1001.21 et seq. (*K.D.*, at pp. 10–14.) The court relied on a variety of factors, including the serious and violent nature of the charged offenses and their lasting impact on the victims. (*Id*. at pp. 26–27.) The trial court commented, " 'I can't overlook how serious this offense was taking a 17-month-old child from her mother in her mother's car and driving away.' " (*Id*. at p. 20.)

Following *Wade*, the Court of Appeal in *K.D.* concluded that the trial court had abused its discretion by relying on the circumstances of the charged offenses without connecting them to the basic purposes of the diversion statute. (*K.D., supra*, 110 Cal.App.5th at pp. 26–27.) The court explained: "As the People concede, and similar to *Wade*, the record shows that the court's consideration of the charged offenses was not an exercise of informed

15

discretion because there is no basis on which to infer that the court considered the charged crimes *as they relate to* the only relevant question the court had to assess after determining that defendant was eligible and would not present an unreasonable risk to public safety: whether, in light of the purposes of the disability diversion scheme, defendant would benefit from diversion-related treatment. Although we recognize the serious and frightening nature of the crimes in this case, the trial court erred in denying diversion on that basis without linking the facts of the charged offenses to the fundamental question of whether defendant would benefit from diversion." (*Id*. at p. 27; see also *Qualkinbush, supra*, 79 Cal.App.5th at pp. 885, 890–892 [court abused its discretion in denying mental health diversion based on use of force in charged crimes and general sentencing objectives without considering primary purpose of mental health diversion statute].)

Although these cases did not involve misdemeanor diversion, their reasoning applies here as well. In denying diversion, the trial court relied solely on the fact that Bobo's negligent conduct caused the death of another person. But the death of another person is a necessary element of the charged crime of misdemeanor vehicular manslaughter. Any form of manslaughter requires "the unlawful killing of a human being without malice." (§ 192.) Criminal negligence is also a required element of all forms of involuntary manslaughter. (*People v. Butler* (2010) 187 Cal.App.4th 998, 1006–1008.) Criminal negligence proximately causing another person's death is therefore inherent in the commission of misdemeanor vehicular manslaughter. Yet the Legislature decided not to make misdemeanor vehicular manslaughter one of the specifically excluded offenses listed in section 1001.95, subdivision (e). As in *Wade*, the trial court's determination that Bobo was not suitable for diversion based solely on facts inherent in the

16

commission of the charged crime is at odds with the Legislature's intent to include misdemeanor vehicular manslaughter within the scope of the diversion statute. (*Wade, supra*, 33 Cal.App.5th at pp. 714–718.)

The trial court also failed to link the facts of the charged offense to the aims of the statute. (*K.D., supra*, 110 Cal.App.5th at p. 27.) The court made no connection between the victim's death from Bobo's negligent driving and the goals of the misdemeanor diversion statute: to treat, restore, and rehabilitate the defendant; prevent the trauma, family harm, and other collateral consequences of a criminal prosecution, conviction, and incarceration; achieve lower recidivism rates; promote racial justice; and decrease the cost of traditional criminal proceedings while increasing accountability through rehabilitative programming. (*Grassi, supra*, 73 Cal.App.5th at p. 292, fn. 4; Sen. floor analysis, *supra*, at p. 2; Assem. 3d reading analysis, *supra*, at p. 4.) The trial court therefore abused its discretion by denying diversion based solely on facts inherent in the charged crime without connecting those circumstances to the purposes of the statute. (*K.D.*, at p. 27.)

The People offer an alternative reason why we should conclude the trial court's ruling was not an abuse of discretion. Specifically, they contend it was proper for the court to rely on the Donato family's opposition to diversion. Although the trial court did not cite this as a reason for denying diversion, the People argued it below and we will assume without deciding that the court did rely on it. The People contend it was proper to rely on the family's opposition to diversion because crime victims have "a constitutional right to finality of the criminal case and to have the person convicted of the

17

crime sufficiently punished" under article I, section 28, subdivisions (a)(5) and (a)(6) of the California Constitution.[3]

While we sympathize with the views of the Donato family, we reject the People's contention as a legal matter. Article I, section 28, subdivision (a)(3) of the California Constitution guarantees to crime victims certain "personally held and enforceable rights described in paragraphs (1) through (17) *of subdivision (b).*" (Italics added.) In contrast to the enforceable rights listed in subdivision (b), the more general provisions of subdivision (a) cited and relied on by the People do not create any enforceable rights. The findings and declarations in subdivision (a) "represent only a general statement of a problem identified by [the] Legislature, and the goal the Legislature hoped to achieve," not an independent source of enforceable rights. (*People v. Superior Court* (*Johnson*) (2004) 120 Cal.App.4th 950, 956; accord *People v. Lombardo* (2020) 54 Cal.App.5th 553, 563; *People v. Nash* (2020) 52 Cal.App.5th 1041, 1072–1073.) The People do not cite or invoke any of the enforceable rights listed in subdivision (b).

We agree that in deciding whether to grant diversion, the court should consider the victims' views to the extent they are in harmony with the provisions and purposes of the applicable diversion statute. But nothing in the California Constitution allows a court to give weight to the preferences of

_____

[3] Article I, section 28, subdivision (a)(5) provides in relevant part: "Victims of crime have a collectively shared right to expect that persons convicted of committing criminal acts are sufficiently punished in both the manner and the length of the sentences imposed by the courts of the State of California." Subdivision (a)(6) says in relevant part: "Victims of crime are entitled to finality in their criminal cases." As used in section 28, the term "victim" includes both the direct victim and "the person's spouse, parents, children, siblings, or guardian, and includes a lawful representative of a crime victim who is deceased, a minor, or physically or psychologically incapacitated." (Cal. Const., art. I, § 28, subd. (e).)

crime victims when they clash with the legislative policy of the diversion law the court is bound to apply.

Specifically, it would not have been proper for the court to deny diversion based on the prosecutor's argument that the victim's family would otherwise never hear "the most powerful words family could hear in a case like this: guilty." The whole purpose of the misdemeanor diversion statute is to provide an alternative resolution that avoids prosecution, conviction, and a potential jail sentence. (*Grassi, supra*, 73 Cal.App.5th at p. 292, fn. 4.) It is always true that successful completion of a misdemeanor diversion program will result in a dismissal of the charges and no proclamation of guilt in court. (§ 1001.95, subd. (c).) But that is the scheme our Legislature has chosen as a matter of policy. Courts are bound to honor this choice. Although Donato's family members understandably prefer a guilty plea or verdict and a criminal sentence, their preferences do not override the controlling legislative policy. The court's discretion must instead be guided "by an appreciation for the crucial role of the Legislature in setting criminal justice policy." (*Sarmiento, supra*, 98 Cal.App.5th at p. 898.) We therefore conclude it would have been an abuse of discretion for the trial court to deny diversion based on the preferences of the victim's family for criminal prosecution and a guilty plea or verdict.

## III

### *Bobo Demonstrated Entitlement to Mandamus Relief*

The People also argue that writ relief is not warranted because Bobo has an adequate remedy at law by way of "an appeal after conviction." "Our issuance of the order to show cause operates as a conclusive finding that any remedy by way of eventual appeal is not adequate here." (*State of California v. Superior Court of Riverside County* (*Underwriters at Lloyd's of London*)

19

(2000) 78 Cal.App.4th 1019, 1023, fn. 3.) "Accordingly, we [need] not revisit the issue." (*Ibid*.; see also *Ingram v. Superior Court* (1979) 98 Cal.App.3d 483, 489–490 [same].) We will nevertheless explain why we have concluded that an appeal after conviction is not an adequate remedy in the context before us.

We are guided by the court's decision in *Gomez v. Superior Court* (2025) 113 Cal.App.5th 671 (*Gomez*), which involved a petition for writ of mandate challenging an order denying pretrial mental health diversion (§ 1001.36). Vacating the order, the Court of Appeal explained why mandamus review was appropriate. (*Gomez*, at pp. 686–687.) The court said: "Pretrial diversion allows for postponement of prosecution to allow the defendant to undergo mental health treatment and dismissal of the criminal charges if the defendant performs satisfactorily in diversion. . . . [¶] Requiring Gomez to wait until resolution of an appeal following her potential conviction to correct the trial court's alleged abuse of discretion would be contrary to the purposes of section 1001.36 and preclude Gomez from receiving the timely mental health treatment intended by the Legislature. It could further entail a waste of time and funds through trial should she perform satisfactorily in diversion. Accordingly, in light of the statutory aims of the diversion statute and the potential prejudice Gomez may suffer in the absence of a prompt resolution of her claim, we conclude mandamus review is appropriate." (*Id*. at p. 687.)

Similar reasoning applies here. Although the misdemeanor diversion statute does not necessarily require any specific form of treatment, its structure and purpose are similar to other forms of pretrial diversion. It effectively suspends the criminal proceedings and offers the defendant an opportunity to fulfill suitable conditions for rehabilitation and accountability as an alternative to criminal prosecution, conviction, and sentence. These

conditions may include treatment, counseling, therapy, classes, community service, or any other "terms, conditions, or programs that the judge deems appropriate based on the defendant's specific situation." (§ 1001.95, subd. (b).) As noted, successful completion of a diversion program results in dismissal of the charges. (*Id.*, subd. (c).)

Under the circumstances before us, requiring Bobo to wait until an appeal from a final judgment of conviction to challenge the erroneous order denying pretrial diversion would deprive her of the intended benefits of the misdemeanor diversion statute by forcing her to undergo criminal prosecution and a possible conviction and jail sentence, with the associated trauma and other collateral consequences the diversion law was designed to prevent. (See *Grassi, supra*, 73 Cal.App.5th at p. 292, fn. 4; Sen. floor analysis*, supra*, at p. 2; Assem. 3d reading analysis*, supra*, at p. 4.) Bobo also would not receive the immediate benefits of a diversion program as the statute contemplates. Moreover, time and resources would be consumed conducting trial and sentencing proceedings, followed by an appeal, all of which would be avoided through successful diversion. (*Gomez, supra*, 113 Cal.App.5th at p. 687.) Because an eventual reversal on appeal could not undo much of the harm caused by the erroneous denial of pretrial diversion, we conclude Bobo has demonstrated the absence of an adequate remedy by way of appeal.[4] There being "no other plain, speedy, and adequate remedy in

---

[4]     We assume without deciding that Bobo would be permitted to appeal the diversion ruling even if she were to plead guilty to the charge. Although a misdemeanor defendant need not obtain a certificate of probable cause to appeal after a guilty plea, as does a defendant convicted of a felony (§ 1237.5), such misdemeanor appeals are "similarly restricted to those that raise 'reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.' " (*People v. Egbert* (1997) 59 Cal.App.4th 503, 508–509 [quoting § 1237.5].) We have discovered no authority directly

the ordinary course of law, the court 'must' issue the writ." (*Eshagian, supra*, 112 Cal.App.5th at p. 453.)

Accordingly, we will issue a writ of mandate directing the appellate division to vacate its order summarily denying Bobo's petition for writ of mandate and enter a new order (1) issuing a peremptory writ in the first instance, and (2) directing the superior court to vacate its order denying misdemeanor diversion and reconsider Bobo's suitability in conformity with the views expressed in this opinion. (See *Wade, supra*, 33 Cal.App.5th at p. 718 [issuing peremptory writ of mandate directing superior court to vacate order denying diversion and "exercise its discretion in conformity with the principles articulated here to decide whether Wade is a suitable candidate for pretrial diversion, treatment, and rehabilitation"]; see also *Qualkinbush, supra*, 79 Cal.App.5th at p. 895 [remanding for superior court to conduct another diversion hearing "and exercise its discretion in conformity with the principles articulated herein"].)

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent appellate division to vacate its order summarily denying Bobo's petition for writ of mandate and issue a peremptory writ in the first instance directing the superior court to vacate its order denying misdemeanor diversion and reconsider Bobo's suitability in conformity with the views

---

deciding whether an appeal from a denial of misdemeanor diversion would be permitted after a guilty plea to a misdemeanor. In the context of felony appeals, however, one court has ruled that although a wrongful denial of pretrial diversion is not jurisdictional "in the fundamental sense," it does constitute " 'other grounds going to the legality of the proceedings.' " (*People v. Padfield* (1982) 136 Cal.App.3d 218, 227–228.)

expressed in this opinion.  The stay of trial court proceedings issued by this court on January 14, 2026 is hereby vacated.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.